632 So.2d 503 (1992)
Louise HARRIS
v.
STATE.
3 Div. 332.
Court of Criminal Appeals of Alabama.
June 12, 1992.
Rehearing Denied November 25, 1992.
*508 Ruth E. Friedman, Atlanta, GA, and Bryan A. Stevenson, Montgomery, for appellant.
James H. Evans, Atty. Gen., and Robert Lusk and Sandra Stewart, Asst. Attys. Gen., for appellee.
McMILLAN, Judge.
The appellant was indicted for two counts of capital murder in the murder of Isaiah Harris: murder for pecuniary gain or pursuant to a contract for hire and murder of a deputy sheriff while the deputy was on duty. Following the introduction of the State's evidence, the appellant moved that the second count of the indictment be dropped, because, she argues, the State failed to prove that Harris was on duty at the time of the offense. The trial court granted this motion, and the case went to the jury only on the first count of the indictment. The jury found the appellant guilty as charged in the first count of the indictment and recommended that she be sentenced to life imprisonment without the possibility of parole, seven jurors voting for life without parole and five voting for death by electrocution. Thereafter, a sentencing hearing was held before the trial court, after which the court ordered that the appellant be sentenced to death by electrocution.
The record indicates that the appellant was involved in an affair with Lorenzo McCarter, a codefendant, while she was married to Harris. The appellant and Harris had experienced marital problems in the past, which the victim apparently believed he had solved when he promised to buy the appellant a house. The record indicates that the appellant asked McCarter to hire someone to kill her husband. McCarter approached a co-employee about doing "the job"; however, the co-employee refused and told his supervisor about the solicitation. McCarter then approached Michael Sockwell and Alex Hood, other codefendants, to commit the offense. McCarter knew that Sockwell owned a gun. Prior to the offense, the appellant met with the three men and was shown the gun. Sockwell and Hood were paid $100 in advance to commit the offense, with the promise that more money would be paid upon completion of the murder. The State presented evidence of the existence of various insurance policies on the victim's life, with the appellant specified as the beneficiary.
The victim, who worked the night shift as a jailer, left his home at approximately 11:00 p.m. to go to work, after being awakened by the appellant a little later than usual. Immediately after Harris left home, the appellant paged McCarter on his beeper, giving the message that her husband was leaving. There was evidence that the appellant had paged McCarter on his beeper many times in the past to arrange liaisons. When he received the message in the instant case, McCarter was seated in Hood's car, located across the street from the entrance to the subdivision in which Harris and appellant lived. Also present in the car were Alex Hood and Freddie Patterson. Patterson was unaware of the conspiracy. Sockwell was hidden behind the hedge located at the entrance to the subdivision. Harris was driving to work in his own 1979 black Ford Thunderbird automobile. When Harris stopped at the stop sign at the entrance of the subdivision, Sockwell shot him once in the face at close range with a shotgun. As a result, the lower half of the victim's face was blown off, leaving his teeth, tongue, and "matter" from his face blown across the car. After the shot, the victim's vehicle traveled slowly across the highway and came to a stop in a ditch.
When the victim failed to arrive at work by 11:25 p.m., a co-employee telephoned his home twice and spoke with the appellant. There was testimony that the appellant offered no assistance and that her speech was slow or sluggish. Two men, returning from *509 work, discovered the victim's body shortly after midnight and telephoned the Montgomery Police Department. After the police arrived at the scene and identified the victim, several officers of the police department and employees of the Montgomery County Sheriff's Department went to the house of the victim and the appellant to notify the appellant of the victim's death. There was testimony that, upon being notified of the victim's death, the appellant began screaming and sobbing, but she shed no tears. Moreover, she became completely calm instantly in order to answer questions. A member of the Montgomery County Sheriff's Department, who knew both the appellant and the victim, testified that she asked the appellant why she did not appear to be upset, and that the appellant responded that she and the victim had been experiencing marital problems for some time. She also told the witness that she had engaged in several extramarital affairs, the current one being with Lorenzo McCarter. The appellant stated that she was in love with McCarter. In response to questions asked by an investigator with the sheriff's department, she responded that McCarter's car was broken down in the vicinity, and when asked if McCarter could have killed the victim, the appellant responded, "If he did kill him I didn't tell him to." At trial, McCarter elected to testify against the appellant, in exchange for the prosecutor's promise not to seek the death penalty in his case.

I
The appellant argues that the trial court erred in removing her appointed attorneys from the case when they sought "reasonable compensation" for representing her as a capital defendant. She further alleges error in the fact that she was not present at the hearing at which they were dismissed. A hearing was held on counsel's motion, during which appointed counsel requested that they receive $90 per hour or that they be excused. Although these appointed attorneys indicated that they preferred not to be excused from the appellant's case, the trial judge stated that because he was without authority to authorize higher compensation, he would relieve the attorneys of their appointment. The attorneys did not object. This matter was never raised again, either by the attorneys or by the appellant at any time prior to this appeal. See Fisher v. State, 587 So.2d 1027 (Ala.Cr.App.), cert. denied, 587 So.2d 1039 (Ala.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992) ("The appellant refers to § 15-1221(d), Code of Alabama 1975, which states that compensation for appointed counsel's trial preparation is limited to $1,000, at a rate of $20 an hour. The record contains no request by appellant or his counsel for additional fees, nor were any claims made concerning the constitutionality of this statute. Therefore, this matter is waived on appeal.") Although the failure to object during a capital case does not preclude review of the alleged error, such failure weighs against a finding of error. Kuenzel v. State, 577 So.2d 474, 523 (Ala.Cr.App.1990), affirmed, 577 So.2d 531 (Ala.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991).
According to § 15-12-21, Code of Alabama 1975:
"(a) If it appears to the trial court that such defendant is entitled to counsel, that such defendant does not expressly waive the right to assistance of counsel and that such defendant is not able financially or otherwise to obtain the assistance of counsel, the court shall appoint counsel to represent and assist the defendant; and it shall be the duty of such appointed counsel, as an officer of the court and as a member of the bar, to represent and assist said defendant.
". . . .
"(d) Counsel appointed in cases described in subsections (a), (b), and (c) above ... shall be entitled to receive for their services a fee to be approved by the trial court. The amount of such fee shall be based on the number of hours spent by the attorney in working on such case and shall be computed at a rate of $40.00 per hour for time expended in court and $20.00 per hour for time reasonably expended out of court in the preparation of such case. The total fees to any one attorney in any case, from the time of appointment through the trial of the case, including motions for new trial, shall not, however, *510 exceed $1,000.00, except as follows: In cases where the original case involves a capital offense or a charge which carries a possible sentence of life without parole, the limit shall be $1,000.00 for out-of-court work, plus payment for all in-court work, said work to be billed at the aforementioned rates. Counsel shall also be entitled to be reimbursed for any expenses reasonably incurred in such defense to be approved in advance by the trial court. Retrials of a case shall be considered a new case."
In Ex parte Grayson, 479 So.2d 76, 79-80 (Ala.1985), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985), the appellant argued that Alabama's system of compensation for appointed counsel denied him of his rights to due process and equal protection of the laws, because of its application to capital cases. Apart from his equal protection argument, the appellant argued "that a capital defendant can not have effective assistance of counsel and, therefore, is deprived of liberty without due process, with such a limit on the amount to be paid to counsel." Id. at 79. The Alabama Supreme Court held adversely to the appellant on both issues, stating:
"These contentions are made on the premise that lawyers will not provide effective assistance unless paid a certain amount of money. But the legal profession requires its members to give their best efforts in `advancing the "undivided interest of [their] client[s]."' Polk County v. Dodson, 454 U.S. 312, 318-19, 102 S.Ct. 445, 449-50, 70 L.Ed.2d 509 (1981). This Court, in Sparks v. Parker, 368 So.2d 528, 530 (Ala. 1979), quoted the New Jersey Supreme Court as follows:
"`We know of no data to support a claim that an assigned attorney fails or shirks in the least the full measure of an attorney's obligations to a client. Our own experience, both at the bar and on the bench, runs the other way. A lawyer needs no motivation beyond his sense of duty and his pride. [State v. Rush, 46 N.J. 399, 405-07, 217 A.2d 441, 444-45 (1966).]'
"We reaffirm this belief that attorneys appointed to defend capital clients will serve them well, as directed by their consciences and the ethical rules enforced by the state bar association. The counsel compensation statute, § 15-12-21, then, does not deprive petitioner of due process and equal protection of the laws."
Ex parte Grayson, supra, at 79-80 (emphasis added in Grayson). Thus, the Alabama Supreme Court has determined that the compensation statute does not deprive a defendant of his right to due process, and because this court is bound by the decisions of the Alabama Supreme Court, see Scott v. State, 570 So.2d 813, 816 (Ala.Cr.App.1990), we find no constitutional error in the trial court's granting of the appellant's attorneys' request to be removed from the case if they could not be paid salaries in excess of the statutory limit.
The appellant also argues that it was error for the trial court to conduct the hearing in which the appellant's original trial counsel were removed in her absence. The appellant argues that, as a defendant, she was entitled to be present during every stage, including every pretrial matter, of her trial. In Johnson v. State, 335 So.2d 663, 671-72 (Ala.Cr. App.), cert. denied, 335 So.2d 678 (Ala.1976), cert. denied, 429 U.S. 1026, 97 S.Ct. 649, 50 L.Ed.2d 629 (1976), the defendant argued that the trial court erred in overruling his motion to be present at the hearing of his preliminary pretrial motions. This court held:
"Preliminary motions hearings and pretrial motions hearings are not viewed by this Court as a `critical stage' of the trial. Berness v. State, 263 Ala. 641, 83 So.2d 613. 23 C.J.S. § 974 states in pertinent part:
"`The trial does not embrace every procedural and administrative step and judicial examination of every issue of fact and law during the trial, and accused's presence is not necessary during proceedings which are no part of the trial, such as preliminary or formal proceedings or motions which do not affect his guilt or innocence....
"`It has been held that accused's presence is not necessary at the hearing and *511 determination of a demurrer to the indictment or information, of a motion to quash the same, of a plea in abatement, or of a motion for leave to file an information, or to summon witnesses, or to amend the information ... or of other motions....
"`... Thus, the exclusion of accused during conferences of court and counsel on questions of law, at the bench or in chambers, has been considered not to constitute a denial of the right of accused to be present at every stage of the trial....' (Footnotes omitted.)
"Also see: State v. Neal, 350 Mo. 1002, 169 S.W.2d 686; Rosebud County v. Flinn, 109 Mont. 537, 98 P.2d 330."
See also Maund v. State, 361 So.2d 1144 (Ala.Cr.App.1978) (wherein this court rejected the defendant's argument that it was error for a pretrial hearing on a motion to disclose the State's evidence to have been held in defendant's absence, holding that pretrial hearings are not a "critical stage" of a trial at which a defendant has a right to be present).
Similarly, federal cases have construed Rule 43 of the Federal Rules of Criminal Procedure, which provides that a defendant must be present at every stage of his trial, to be inapplicable where the "privilege" of presence would be of no real benefit to the defendant. See Peterson v. United States, 411 F.2d 1074 (8th Cir.1969), cert. denied, 396 U.S. 920, 90 S.Ct. 247, 24 L.Ed.2d 199 (1970). See also Stein v. United States, 313 F.2d 518 (9th Cir.1962), cert. denied, 373 U.S. 918, 83 S.Ct. 1307, 10 L.Ed.2d 417 (1963) (the presence of a defendant, to be required, must bear a reasonable substantial relation to the opportunity to defend, because the constitution does not assure the privilege of presence when presence would be useless).
The question remains whether a distinction should be made when the case is a capital case. In Proffitt v. Wainwright, 685 F.2d 1227 (11th Cir.1982), cert. denied, 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 697 (1983), the court applied a stricter no-waiver rule to the right of presence for a capital defendant, the rule for a noncapital defendant, in federal court, being the "knowing-and-voluntary-consent requirement" to waiver. However, in determining a capital, as opposed to noncapital, defendant's rights pertaining to waiver of presence, the court began with the same analysis used in Johnson v. State, supra, that the hearing must be a critical or a central part of the trial. The court reasoned:
"A defendant's right to be present at all stages of a criminal trial derives from the confrontation clause of the Sixth Amendment and the due process clause of the Fourteenth Amendment. Illinois v. Allen, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970); Hopt v. Utah, 110 U.S. 574, 579, 4 S.Ct. 202, 204, 28 L.Ed. 262 (1884). This right extends to all hearings that are an essential part of the triali.e., to all proceedings at which the defendant's presence `has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.' Snyder v. Massachusetts, 291 U.S. 97, 105-06, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). Compare Hopt v. Utah, supra (defendant has right to be present at empaneling of jurors); Bartone v. United States, 375 U.S. 52, 84 S.Ct. 21, 11 L.Ed.2d 11 (1963) (court cannot impose sentence in absence of defendant); with United States v. Howell, 514 F.2d 710 (5th Cir.1975); cert. denied, 429 U.S. 838, 97 S.Ct. 109, 50 L.Ed.2d 105 (1976) (no right to be present at in camera conference concerning attempted bribe of juror); United States v. Gradsky, 434 F.2d 880 (5th Cir.1970), cert. denied, 409 U.S. 894, 93 S.Ct. 203, 34 L.Ed.2d 151 (1971) [1972] (right to presence does not extend to evidentiary hearing on suppression motion.) We have already held that the penalty phase is an integral part of a capital trial for purposes of cross-examination. See text supra at 35-41. For similar reasons, we conclude that the capital defendant's interest in attending his sentencing hearing is as great as his interest in being present at the guilt determining stage. Cf. Gardner v. Florida, 430 U.S. [349] at 358, 97 S.Ct. [1197] at 1204 [51 L.Ed.2d 393] (sentencing is `critical stage' of capital trial). Hence we hold that the right to be present extends to the sentencing as well as the guilt portion of a capital trial." *512 Id. at 1256-57. But see Adams v. State, 28 Fla. 511, 10 So. 106 (1891).[1]
The court in Proffitt v. Wainwright, supra, acknowledged in a footnote that in Snyder v. Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934), "which was a capital case, [the Court] stated that the sixth amendment privilege of confrontation could `be lost by consent or at times even by misconduct.' Snyder v. Massachusetts, 291 U.S. at 106, 54 S.Ct. at 332." Proffitt v. Wainwright, supra, at 1257, n. 43. See also State v. Davis, 290 N.C. 511, 227 S.E.2d 97, 110 (1976) ("[t]he strict rule that an accused cannot waive his right to be present at every stage of his trial upon an indictment charging a capital felony, State v. Moore, 275 N.C. 198, 166 S.E.2d 652 (1969), is not extended to require his presence at the hearing of a pretrial motion for discovery when he is represented by counsel who consented to his absence, and when no prejudice resulted from his absence"). See also State v. Piland, 58 N.C.App. 95, 293 S.E.2d 278 (1982), appeal dismissed, 306 N.C. 562, 294 S.E.2d 374 (1982) ("[t]he [capital] defendant in this case has not demonstrated any prejudice to him by his absence from a part of the hearing. The evidence elicited was not disputed and there has been no showing that it would have been different had the defendant been present").
Thus, if the appellant's presence, in the present case, would have been useless to her defense and if the hearing was not considered to be a "critical stage" of her trial, then we can find no error in the appellant's absence from the hearing. In Lowery v. Cardwell, 535 F.2d 546 (9th Cir.1976), the court held the record before it to be insufficient to determine whether the doctrine of fundamental fairness required the defendant's presence at an in-chambers conference during which the defense counsel sought to withdraw from the case. This conference occurred during trial and was based on the defense counsel's belief that the defendant had lied on the witness stand. The court remanded the case for a hearing to determine the defense counsel's reasons for his motion to withdraw and the details of what had occurred during this conference. On remand, the court disclosed the defense counsel's reasons for seeking to withdraw and stated that the only other matter discussed during the hearing concerned the length of the trial. No error was found in the trial court's action in conducting the hearing outside the defendant's presence. Lowery v. Cardwell, 575 F.2d 727 (9th Cir. 1978). Similarly, in the present case, the trial court's decision to allow the appellant's trial counsel to be removed from the case was based on a question of law, the dictates of a statute, a matter concerning which the appellant's presence would be useless. As noted in Proffitt v. Wainwright, supra, a defendant's right to be present arises from his right to confrontation and, in the present case, no witnesses were involved in this hearing. The appellant has been unable to suggest or demonstrate any possibility of prejudice resulting from her absence. Therefore, we find no error in this matter.

II
The appellant argues that her conviction is due to be reversed because, she argues, the prosecutor used her peremptory strikes in a racially discriminatory manner and then refused to give reasons for those strikes. The record indicates that, in making his objection pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), defense counsel alleged that there were 17 black veniremembers on a panel of 51, and that the prosecutor used 11 of her 19 strikes to remove blacks. The prosecutor responded that the appellant had failed to make a prima facie showing pursuant to Batson v. Kentucky, supra. She stated that in Montgomery County, the black *513 population constituted approximately 40% of the general population. She noted that of the 14 jurors, which included the 2 alternates, 8 were white and 6 were black. Of the two alternates, one was white and one was black. She concluded that, of the original 12 jury members, 7 would be white and 5 black, which would make the black percentage of representation on the jury over 40%. Defense counsel responded, stating that, because the prosecutor used 11 of her 19 strikes against blacks, she should have to show some reason for doing so. The trial court denied the appellant's motion.
In a companion case, which was tried by the same prosecutor in the same county, this court addressed this same claim under a basically identical factual situation. In Hood v. State, 598 So.2d 1022 (Ala.Cr.App.1991), the trial court found that the defendant failed to make a prima facie showing under Batson that the State had used its peremptory challenges in a discriminatory manner. In that case, the jury venire consisted of 44 veniremembers, 15 of whom were black. The prosecutor exercised 10 of her 16 peremptory challenges against black veniremembers, resulting in a jury composed of 5 blacks and 7 whites. In that case, as in the present case, the defendant "relied only on the number of blacks struck by the State. Defense counsel did not bring to the circuit court's attention any other factor which might tend to show that the prosecutor purposefully discriminated against potential jurors on the basis of race." In Hood v. State, this court relied on the following language in Harrell v. State, 571 So.2d 1270 (Ala.1990), cert. denied, 499 U.S. 984, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991):
"[A] defendant cannot prove a prima facie case of purposeful discrimination solely from the fact that the prosecutor struck one or more blacks from the jury. A defendant must offer some evidence in addition to the striking of blacks that would raise an inference of discrimination. When the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created. Logically, if statistical evidence may be used to establish a prima facie case of discrimination, by showing a discriminatory impact, then it should also be available to show the absence of a discriminatory purpose."
Id. at 1271-72. This court, in Hood v. State, supra, stated:
"Although both this court and the Alabama Supreme Court have observed that the assistant district attorney who prosecuted the appellant has a history of using peremptory challenges to discriminate against black jurors, see Ex parte Bird & Warner, [Ms. 89-1061 and 89-1062, December 6, 1991] [594] So.2d [676] (Ala. 1991), that history, standing alone, does not establish a prima facie case for the defense in any given case. Compare Harrell v. State, 571 So.2d at 1272 (past conduct of the prosecutor, in connection with other facts relating to the particular venire, is relevant in determining whether an inference of discrimination exists); Ex parte Bird & Warner, [594] So.2d at [681-82] (`evidence [of past history], in conjunction with the disparate impact of the peremptory strikes in this case, ... raises an inference of discriminatory intent'). In this case, the prosecutor did not state any reason for striking any member of the venire. Under these circumstances, Harrell dictates that we uphold the trial court's determination that the appellant did not establish a prima facie case under Batson and Ex parte Branch, 526 So.2d 609 (Ala.1987), for the following reasons: (1) the trial court was presented with no evidence of alleged discrimination other than the number of blacks struck by the State, and (2) the peremptory striking process did not have a disparate impact upon the number of blacks empaneled as jurors. Instead, the process resulted in a jury of proportionately more black citizens than the venire from which it was selected."
Because the same relevant facts and law apply to the present case, as those pertinent to this court's holding in Hood v. State, supra, we find that the trial court properly held that the appellant failed to make a prima facie showing of purposeful discrimination in the prosecutor's use of peremptory challenges against blacks.

*514 III
The appellant argues that she was charged under a duplicitous indictment and that the trial court erred in failing to give the jury a unanimity instruction. Specifically, the appellant argues that the jury was improperly charged that all 12 had to agree that the appellant committed murder "either for pecuniary gain or pursuant to a contract or for hire in order to find her guilty of capital murder." The appellant acknowledges that such an instruction tracks the language of the indictment, but she argues that this instruction, and the indictment on which it was based, allowed her to be convicted of capital murder by a nonunanimous jury. She argues that "some of the jurors [might have] believed she had hired one or more men to kill her husband, while" others might have believed she had committed the murder for reasons of pecuniary gain, thus allegedly resulting in a non-unanimous verdict.
The record indicates that the count of the indictment that went to the jury charged that the defendant did "intentionally cause the death of Isaiah Harris by shooting him with a shotgun for pecuniary or other valuable consideration or pursuant to a contract or for hire in violation of Section 13A-5-40 of the Code of Alabama 1975 as amended." Pursuant to Section 13A-5-40(a)(7), Code of Alabama 1975 murder is made capital if it is "done for a pecuniary or other valuable consideration or pursuant to a contract or for hire."
"A way of framing the issue is suggested by analogy. Our cases reflect a long-established rule of the criminal law that an indictment need not specify which overt act, among several named, was the means by which a crime was committed. In Andersen v. United States, 170 U.S. 481 [18 S.Ct. 689, 42 L.Ed. 1116] (1898), for example, we sustained a murder conviction against the challenge that the indictment on which the verdict was returned was duplicitous in charging that theft occurred through both shooting and drowning. In holding that `the Government was not required to make the charge in the alternative,' id., at 504 [18 S.Ct. at 694], we explained that it was immaterial whether death was caused by one means or the other. Cf. Borum v. United States, 284 U.S. 596 [52 S.Ct. 205, 76 L.Ed. 513] (1932) (upholding the murder conviction of three co-defendants under a count that failed to specify which of the three did the actual killing); St. Clair v. United States, 154 U.S. 134, 145 [14 S.Ct. 1002, 1006, 38 L.Ed. 936] (1894). This fundamental proposition is embodied in the Federal Rules of Criminal Procedure 7(c)(1), which provides that `[i]t may be alleged in a single count that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means.'"
Schad v. Arizona, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991). See Thompson v. State, 542 So.2d 1286 (Ala.Cr.App. 1988), affirmed, 542 So.2d 1300 (Ala.1989), cert. denied, 493 U.S. 874, 110 S.Ct. 208, 107 L.Ed.2d 161 (1989) (wherein the indictment charged that the defendant caused the victim's death "by striking her with his fist and by dragging her behind an automobile, either or both of which acts resulted in the aspiration of stomach contents and suffocation"). See also Boulden v. State, 278 Ala. 437, 179 So.2d 20 (1965) (wherein the court found counts of the indictment that "charge in the alternative the means by which the offense was committed," i.e., that the victim "died as a result of bullet wounds inflicted by a pistol or pistols or by a gun or guns, or as a result of cuts inflicted by use of a knife or other sharp instrument," were proper).
"In effect, the indictment charged, in a single count, alternative methods of proving the same crime. See Sisson v. State, 528 So.2d 1151 (Ala.Cr.App.1987), affirmed, Ex parte State, 528 So.2d 1159 (Ala.1988) (`Section 32-5A-191(a)(1) and (2) are merely two different methods of proving the same offensedriving under the influence.') `When an offense may be committed by different means or with different intents, such means or intents may be alleged in an indictment in the same count in the alternative.' Alabama Code 1975, § 15-8-50. Chappell v. State, 52 Ala. 359, 360-61 (1875), held that in an indictment for common law robbery, the taking of the property from the victim may be charged *515 to have been `against his will, by violence to his person' or `by putting him in such fear as [to cause him] unwillingly to part with the same' in different counts or in the same count in the alternative."
Williams v. State, 538 So.2d 1250, 1252 (Ala. Cr.App.1988). Thus, in Tucker v. State, 537 So.2d 59 (Ala.Cr.App.1988), this court held that an indictment that charged the capital murder of a police officer in alternative language complied with the statutory language of § 13A-6-2(a)(1) and § 13A-5-40(a)(5), Code of Alabama 1975. By statutory definition, the murder of a police officer is made capital when the officer is intentionally killed "while such officer is on duty" or "because of some official or job-related act or performance." This court reasoned:
"`An apparent purpose of these several provisions [§ 15-8-50, 51, 52] is to obviate the necessity of a multiplicity of counts, permitting one count to serve the purposes accomplished by several at common law....' Horton v. State, 53 Ala. 488, 492 (1875). The indictment was properly framed to conform to the proof. It charged only one offensecapital murder of a peace officerwhich was committed for one of two reasons: either because the officer was trying to arrest Tucker's step-mother or because the officer was trying to arrest Tucker. This indictment completely satisfied the constitutional requirements of due process. Summers v. State, 348 So.2d 1126, 1132 (Ala.Cr.App.), cert. denied, Ex parte Summers, 348 So.2d 1136 (Ala.1977), cert. denied, 434 U.S. 1070, 98 S.Ct. 1253, 55 L.Ed.2d 773 (1978). See Davis v. State, 505 So.2d 1303, 1304 (Ala.Cr.App.1987) (operating a motor vehicle `while under the influence of intoxicating liquors or narcotic drugs'); Wilson v. State, 84 Ala. 426, 4 So. 383 (1888) (murder `by striking him in the head ... or by choking him with a piece of... cord'); King v. State, 137 Ala. 47, 34 So. 683 (1903) (murder `by hitting him or by striking him with a miner's pick, or by stabbing or cutting him with a knife, or with some sharp instrument')."
Tucker v. State, supra, at 61.
As in Tucker v. State, supra, in the present case, the indictment in the present case charged only one offensecapital murder for hirewhich was committed for one of two reasons: either Isaiah Harris was killed pursuant to a contract in order for Louise Harris and Lorenzo McCarter to continue their relationship, or Isaiah Harris was killed pursuant to a contract in order for the perpetrators to secure pecuniary gain, specifically $100 paid by Louise Harris and the proceeds of certain insurance policies on the victim's life, which were to be divided among all the participants. Thus, the indictment was not duplicitous.
Moreover, the trial court's charge concerning jury unanimity were proper. The trial court instructed the jury that it had to reach a unanimous verdict. The appellant argues that because the trial court charged the jurors that all 12 must agree as to one of three possible verdictsguilty of the capital offense, guilty of lesser-included offense, or not guiltythe trial court's instructions were improper. Specifically, the appellant argues that the instruction was error because it did not require the unanimity as to one of the alternative theories of the capital offense, i.e., murder for hire, murder pursuant to a contract, or murder for pecuniary gain. However, because we have previously concluded that the jury did not have to decide between this alternative language, the trial court committed no error in its instructions. See Schad v. Arizona, supra (it was constitutionally permissible for the jurors to agree on a unanimous verdict based on any combination of the alternative means to a single offense. 501 U.S. at ___, 111 S.Ct. at 2493-506).

IV
The appellant argues that the holding of "various proceedings" outside her presence violated her right to a fair trial and determination of punishment, as guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution by Alabama law. The appellant cites a number of pretrial proceedings at which she alleges that she was not present. The State submits that the record affirmatively shows that the appellant was present at each proceeding, except at the hearing at which her initial trial *516 counsel was removed (see Part I) and during a hearing on a motion to produce. The appellant cites three additional hearings from which she was absent, each of which addressed a number of subjects, and each of which was held in chambers; these hearings were held on March 8, 1989; April 10, 1989; and April 19, 1989, respectively. The record notes that Ellen Brooks (assistant district attorney), James H. Evans (district attorney), David Vickers, Knox Argo, and Barry Leavell were present at the first hearing. No mention is made of the appellant's presence. As to the second hearing, the record fails to specifically note who was present; however, during the course of the hearing, it is clear that Knox Argo, Eric Bowen, Ellen Brooks, and Ms. Baker were present. At the third hearing, the record indicates that James H. Evans, David Vickers, and Eric Bowen were present. There is no indication that the appellant was present at these latter two hearings, and we are unable to glean from the conversations during the hearings whether the appellant was present.
As to these pretrial hearings, which the appellant argues were held in her absence and at which the State argues the appellant was present, it should be noted that this court ordinarily will not presume error from a silent record. Atchison v. State, 565 So.2d 1186 (Ala.Cr.App.1990). However, even assuming that the record's failure to mention the appellant's presence indicates that she was in fact not present, we find no error in her absence during these hearings. The particular matters raised during these hearings, which the appellant argues required her presence in order to aid her counsel, were discussions of a public trial, evidentiary plans of the State, defense motions for the State to produce any statements allegedly made by the appellant, a defense motion requesting criminal records on certain State's witnesses,[2] and a brief rendition by the State of what it anticipated its case and evidence would entail. Because the trial court ordered the State to turn over its entire file on this case to the defense, there is no error in the defendant's absence during the State's brief rendition of its evidence, because the appellant could have suffered no prejudice. The other matters involved questions of law, involved no witness testimony, and from the discussions therein, it is clear that the appellant's presence would not have aided her defense. See Maund v. State, supra; People v. Teitelbaum, 163 Cal.App.2d 184, 329 P.2d 157 (1958), cert. denied, 359 U.S. 206, 79 S.Ct. 738, 3 L.Ed.2d 759 (1959) (wherein there was no error in the holding of eight conferences in chambers, because in none of these proceedings were any matters discussed as to which the defendant could have been of any aid to his counsel, and each concerned only questions of law).
As to the hearing on the appellant's motion to produce, from which the State concedes the appellant was absent, the State argues that defense counsel waived the appellant's right to be present, stating that her presence was not necessary to hear the legal arguments. The record indicates that, prior to beginning the hearing, the trial court asked defense counsel, "Do you waive your client's presence here for this hearing?" Defense counsel responded, "Yes, Your Honor. Apparently I'll have toshe's in the Elmore County jail. I did not have time to get her here." Defense counsel thereafter stated, "Your Honor, I don't think it's necessary for her to be here, to hear legal arguments on this point." During this hearing, the defense requested the production of certain telephone conversations from the appellant's house to the police department. The trial court denied this request as to all the conversations, but ordered the State to turn over any exculpatory material contained in those conversations. The defense also requested the production of tape-recorded statements by the defendant, which request the trial court *517 granted. The defense also asked for production of any statements, including grand jury testimony, of certain State's witnesses who were not accomplices. The trial court denied this request as to all statements, but ordered the State to turn over any exculpatory material contained in the witnesses' statements.
We decline to hold, in the present case, that defense counsel could waive the appellant's right to be present. See Proffitt v. Wainwright, supra.[3] However, because the hearing involved only questions of law, the appellant's presence would have been needless. Moreover, in light of the trial court's favorable rulings for the appellant, she was not prejudiced by her absence. See State v. Iverson, 187 N.W.2d 1 (N.D.), cert. denied, 404 U.S. 956, 92 S.Ct. 322, 30 L.Ed.2d 273 (1971) (wherein, although the court found error in the defendant's absence from four conferences held in chambers, the court held that the error was harmless, emphasizing that in three of the conferences the defendant obtained favorable evidentiary rulings).

V
The appellant argues that the trial court erred in denying her motion for a change of venue. The record indicates that, prior to trial, a hearing was held on the appellant's motion for a change of venue, during which an investigator testified for the appellant. He stated that he had taken a survey of 25 to 30 people in different areas of Montgomery County. He testified that he had driven around the county, stopping at various locations, and that he had attempted to question different type of people. He admitted that his survey was informal and unscientific and that he had no specialized training or polling skills. He testified that his findings revealed that 35% to 40% of the people questioned had a fixed opinion as to the appellant's guilt. The appellant offered no further evidence in support of her motion. This showing was not sufficient to prove that the community was saturated with prejudicial publicity.
"Absent a showing of abuse of discretion, a trial court's ruling on a motion for change of venue will not be overturned. Ex parte Magwood, 426 So.2d 929, 931 (Ala.), cert. denied, 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1355 (1983). In order to grant a motion for change of venue, the defendant must prove that there existed actual prejudice against the defendant or that the community was saturated with prejudicial publicity. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Franklin v. State, 424 So.2d 1353 (Ala.Crim.App.1982). Newspaper articles or widespread publicity, without more, are insufficient to grant a motion for change of venue. Anderson v. State, 362 So.2d 1296, 1298 (Ala.Crim.App.1978). As the Supreme Court explained in Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642-43, 6 L.Ed.2d 751 (1961):
"`To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court....'
"The standard of fairness does not require jurors to be totally ignorant of the facts and issues involved. Murphy v. Florida, 421 U.S. 794, 799-800, 95 S.Ct. 2031, 2035-2036, 44 L.Ed.2d 589 (1975). Thus, `[t]he proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through the voir dire examination.' Anderson v. State, 362 So.2d 1296, 1299 (Ala.Crim.App. 1978)."
*518 Ex parte Grayson, 479 So.2d 76, 80 (Ala. 1985), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985).
Moreover, the appellant has failed to prove that there existed any actual prejudice against her. The jurors who indicated that they had any knowledge of the case were questioned individually concerning the extent of their knowledge, the source of that knowledge, and the ability to disregard the information and decide the case based upon the facts presented in court. No juror remaining on the venire indicated that he or she could not decide the case based on the facts presented and on the law as instructed by the court. Thus, there was no actual prejudice demonstrated by the appellant resulting from pretrial publicity. Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).
Although the appellant further claims error in the trial court's failure to allow individual voir dire of every potential juror, individual voir dire was undertaken where there was any reason for follow-up, including any indication of pre-trial knowledge of the case. Whether a capital defendant is allowed individual voir dire of each prospective juror is a matter vested within the discretion of the trial court. Hallford v. State, 548 So.2d 526, 538-39 (Ala.Cr.App. 1988), affirmed, 548 So.2d 547 (Ala.), cert. denied, 493 U.S. 945, 110 S.Ct. 354, 107 L.Ed.2d 342 (1989). We find no abuse of discretion in this case. Kuenzel v. State, 577 So.2d 474, 484 (Ala.Cr.App.1990), affirmed, 577 So.2d 531 (Ala.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991).
The appellant also claims that the trial court erred in denying her request to have the venire complete a questionnaire. However, "the trial court has discretion regarding how the voir dire examination of jury will be conducted, and ... reversal can be predicated only upon an abuse of that discretion." Bui v. State, 551 So.2d 1094, 1110 (Ala.Cr.App.1988), affirmed, 551 So.2d 1125 (Ala.1989), vacated on other grounds, 499 U.S. 971, 111 S.Ct. 1613, 113 L.Ed.2d 712 (1991). There was no abuse of discretion by the trial court as to this matter.
The appellant further claims that the trial court erred in failing to ask potential jurors whether any of them had fixed opinions in favor of the death sentence. However, it should be noted that this jury returned a sentence of life without parole, and the rule established in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), does not apply where the jury does not recommend the death penalty. See Neelley v. State, 494 So.2d 669, 680 (Ala.Cr. App.1985), affirmed, 494 So.2d 697 (Ala.1986), cert. denied, 480 U.S. 926, 107 S.Ct. 1389, 94 L.Ed.2d 702 (1987); Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Moreover, because the appellant failed to object to the trial court's failure to question the jurors, this alleged error would have to amount to plain error for the appellant to be entitled to relief. However, this court has held that the failure of the trial court to question potential jurors concerning their views in favor of the death penalty does not constitute plain error. Henderson v. State, 583 So.2d 276 (Ala.Cr.App.1990), affirmed, 583 So.2d 305 (Ala.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992).

VI
The appellant argues that it was error for sheriff's deputies to manage and be in charge of the jurors during their sequestration and deliberations, in light of the fact that the victim was a deputy sheriff. The record reveals that the appellant objected on this ground at trial, and that the trial court responded that the deputies had long been assigned to court detail and that the trial court was familiar with them. The trial court further stated that the deputies were "well aware of their responsibilities." There is no indication or claim by the appellant of any improper behavior by the deputies in this regard or of any improper communications between the deputies and the jury. Thus, there is no evidence of prejudice to the appellant.
In Holloway v. State, 477 So.2d 487 (Ala. Cr.App.1985), overruled on other grounds, Ex parte McCree, 554 So.2d 336 (Ala.1988) a manslaughter case, the defendant argued *519 that because the sheriff and several deputies were witnesses for the State, the trial court should not have allowed the sheriff's department to manage the jury and to sequester them. In that case, this court noted that there was no evidence of prejudice to the defendant. This court held:
"`Reversible error will not be presumed, but the burden is upon the appellant to show injury in this respect.' Bowens v. State, 54 Ala.App. 491, 309 So.2d 844 (1974), cert. denied, 293 Ala. 746, 309 So.2d 850 (1975).
"Section 12-16-10, Code of Alabama 1975, establishes the duty of the sheriff to provide suitable lodging and meals for members of a sequestered jury. Furthermore, the sheriff and deputies are the proper officers to have charge of the jurors during their deliberations, and that includes the rendering of such services to them as their physical conditions require. Pounders v. State, 55 Ala.App. 204, 314 So.2d 123 (1975)."
Holloway v. State, supra, at 488. Because there is no indication of any prejudice to the appellant in the deputies' overseeing of the jury, we find no error as to this matter.

VII
The appellant argues that the trial court erred in denying her challenges for cause of three veniremembers who indicated that they had knowledge of the case from pretrial publicity, as well as her challenge of another veniremember who knew the victim. Each of the three veniremembers who had knowledge of the case from pretrial publicity was questioned individually by the trial court concerning this knowledge. All three stated that they only remembered the basic facts of the case, and two of the three specifically testified that they tended not to believe what they heard through the media. All three potential jurors stated that they had no doubts that they could render a fair, just, and impartial verdict based on the facts presented in court and the law as instructed by the trial court. The mere knowledge of the facts and issues in this case, as in any case, does not disqualify a potential juror from serving on the case. Kinder v. State, 515 So.2d 55, 59-61 (Ala.Cr.App.1987). See also Kuenzel v. State, supra, at 483-84. The appellant also alleges error in the trial court's refusal to excuse for cause a potential juror who knew the victim personally and professionally and who was also familiar with the facts and circumstances of the crime. The following transpired during the individual voir dire of this prospective juror:
"THE COURT: [Prospective juror], you had indicated that you had either read or heard or seen something about this matter in the past; is that correct?
"PROSPECTIVE JUROR: Yes, sir.
"THE COURT: Could you, the best you can recall, tell us what you know about it and from what source, what you heard, what you read, what you saw?
"PROSPECTIVE JUROR: Well, mainly, you know, from what I read in newspaper accounts and [television] accounts. Also, Judge, there's one thing I don't think you asked this morning, I don't know the significance of it but it may be, but from a professional point of view I knew Mr. Harris.
"THE COURT: Okay. Can you tell us how you knew him?
"PROSPECTIVE JUROR: He used to bring inmates to Kilby and as a correctional officer we had a relationship there.
"THE COURT: Okay.
"PROSPECTIVE JUROR: And also, two or three, I would think two or three occasions I might have been with him socially.
"THE COURT: Okay. What type of social?
"PROSPECTIVE JUROR: Just, you know, get together like I think he was a retired military, so am I. I think one occasion I met him at the club. Another occasion I think there was some correctional officers getting together. He was on the scene, you know, just for a social affair.
"THE COURT: Do you feel that personal acquaintance with him
"PROSPECTIVE JUROR: I didn't know him personally, per se. I just, you know, just, as I say, just a relationship we had on those occasions.

*520 "THE COURT: Do you feel like whatever relationship
"PROSPECTIVE JUROR: No, sir.
"THE COURT:You have with him would in any way affect your ability to render a fair, just, and impartial verdict from this case?
"PROSPECTIVE JUROR: No, sir, I don't think it has any bearing. I just wanted to tell you so it wouldn't come up later.
"THE COURT: I appreciate you telling us.
"PROSPECTIVE JUROR: But it had no bearing on my making a judgment fairly, a fair decision.
"THE COURT: Do you recall what you read in the newspaper accounts about this or heard on t.v.?
"PROSPECTIVE JUROR: Just the incident itself.
"THE COURT: What about it?
"PROSPECTIVE JUROR: The fact that they had found his car on the side of the road and, um, he was on his way to work, basically.
"THE COURT: Do you recall anything about who may have been arrested for it, or who was alleged
"PROSPECTIVE JUROR: Yes, sir, they did indicate at a later date that his wife and some other people, I don't recall the names
"THE COURT: Ymhum.
"PROSPECTIVE JUROR: Have been implicated.
"THE COURT: Based on what you may have read or heard do you feel like you'd be able to put that aside and listen only to the facts as you hear them in Court?
"PROSPECTIVE JUROR: Yes, sir.
"THE COURT: And render a fair, just, and impartial verdict?
"PROSPECTIVE JUROR: Yes, sir.
"THE COURT: Do you feel like you'd be tainted in any way based on what you've read or heard in the past about this?
"PROSPECTIVE JUROR: No, sir, none whatsoever.
"THE COURT: So you have no doubt that you can be fair in this case?
"PROSPECTIVE JUROR: Yes, sir."
"The facts that the victim and a prospective juror are personally acquainted and work for the same company do not automatically disqualify a juror for cause (cite omitted). Employment of the juror by the same company that employed the victim is not a prima facie indication of interest or bias on the part of the juror." Carlton v. State, 415 So.2d 1241, 1242 (Ala.Cr.App.1982), citing Glenn v. State, 395 So.2d 102, 107 (Ala.Cr. App.1980), cert. denied, 395 So.2d 110 (Ala. 1981).
"The grounds on which a juror may be challenged for cause are set out in § 12-16-150, Code of Alabama (1975).... Furthermore, grounds for challenge for cause under the common law still exist where they are not inconsistent with § 12-16-150. Stewart v. State, 405 So.2d 402, 407 (Ala.Cr.App.1981); Felton v. State, 46 Ala. App. 579, 246 So.2d 467 (1971); Mullis v. State, 258 Ala. 309, 62 So.2d 451 (1952).
"`The test to be applied is can the juror eliminate the influence of his scruples and render a verdict according to the evidence. Ordinarily a juror is not disqualified where it appears that he is willing to follow the instructions of law given by the trial court and is able to decide the case impartially according to the evidence notwithstanding his scruples. The determination of this question is based on the juror's answers and demeanor and is within the sound discretion of the trial judge. Tidmore [v. City of Birmingham, 356 So.2d 231 (Ala.Cr. App.1977), cert. denied, 356 So.2d 234 (Ala.1978)]. A juror is incompetent whose answers show that he would follow his own views regardless of the instructions of the court. Watwood v. State, 389 So.2d 549, 550 (Ala.Cr.App.), cert. denied, 389 So.2d 552 (Ala.1980).
"Barbee v. State, 395 So.2d 1128, 1130-31 (Ala.Cr.App.1981)....
"`Thus, where a juror states that he has opinions but that he would try the case fairly and impartially according to the law and the evidence and that he would not allow his opinion to influence *521 his decision, it is not error for a trial judge to deny a challenge for cause. Howard v. State, 420 So.2d 828, 831 (Ala.Cr.App.1982). "A juror who brings his thoughts out into the open in response to voir dire questions may be the one who later `bends over backwards' to be fair...." Clark v. State, 443 So.2d 1287, 1289 (Ala.Cr.App.1983).' "Mahan v. State, 508 So.2d 1180 (Ala.Cr.App. 1986)."
Kinder v. State, 515 So.2d 55, 60-61 (Ala.Cr. App.1986).
Because this potential juror stated that he would base his decision on the evidence presented at trial and on the judge's instructions as to the law, we find no abuse of discretion by the trial court in denying the appellant's challenge for cause of this potential juror. "A trial court's ruling on challenges for cause based on bias is entitled to great weight and will not be disturbed on appeal unless clearly shown to be an abuse of discretion." Stewart v. State, 405 So.2d 402, 408 (Ala.Cr.App.1981).

VIII
The appellant argues that the trial court erred in limiting her cross-examination of a State's witness concerning an alleged prior conviction and probationary status, which she contends violated her Sixth, Eighth, and Fourteenth Amendment rights under the United States Constitution and Alabama law. The appellant refers to State's witness Alonzo Trimble, who testified that he worked with Lorenzo McCarter and that he was approached by him and solicited to commit the murder.
The record reveals that, during the cross-examination of Trimble, defense counsel asked if the witness was still on probation. The witness responded that he was not. The prosecutor then asked that the question and answer be stricken, as there was "no basis whatsoever for [the defense counsel's] asking that question." The prosecutor indicated that she had no knowledge that the witness had ever been on probation, and defense counsel responded that the defense had been informed that the witness was on probation. Thereafter, a hearing was held in chambers and the prosecutor again asserted that defense counsel had no basis for his question and was merely conducting a "fishing expedition." When defense counsel was asked by the trial court if he had information that the witness was on probation, he responded:
"I don't know whether he is or not, Judge. I just don't know. They haven't furnished us a rap sheet on him. [The prosecutor] says she doesn't have it in her file and I believe her, you know. It's our understanding that he's convicted of an offense and was on probation. Maybe it was at the time he gave the statements. Maybe he's not any longer. I don't see why we don't just ask him."
The prosecutor responded that the question had been asked and answered, but complained that the question had implied that he may have been on probation, so the damage had been done. Thereafter, Trimble was called into chambers and asked by the trial court if he had ever been convicted of a crime involving moral turpitude. The witness responded that "they" tried to convict him of "a stolen vehicle"; however, he indicated he was never convicted. The witness then stated that he had been charged with third degree assault in municipal court about three months prior to the instant trial. He responded that those charges were brought after his involvement in the present case. Subsequently, while the parties were still in chambers, an assistant prosecutor asked the witness if he had ever been on probation. The witness responded that he had been on unsupervised probation but that he never had a probation officer. The following then transpired:
"THE COURT: What were you on unsupervised probation for?
"THE WITNESS: They had tried to accuse me [of] stealing a truck, but I didn't get noI didn't do any time behind it.
"THE COURT: I didn't ask you if you'd done any time. How were you on unsupervised probation? You can't be on any kind of probation unless you're convicted.
"THE WITNESS: I was under the custody of my mother for a certain period of time and not getting in any kind of trouble.

*522 "THE COURT: How old were you?
"THE WITNESS: Um, I think I was twenty-seven when it happened.
"THE COURT: How long ago was that?
"THE WITNESS: It's been about a year, maybe two years.
"THE COURT: Was that during the period of time this all was going on?
"THE WITNESS: Yeah, it was.
"THE COURT: Who put you on unsupervised probation?
"THE WITNESS: My lawyer was, um, Mr. Brooks.
"[PROSECUTOR]: I don't believe it.
"THE COURT: Well, who put you on unsupervised probation?
"THE WITNESS: The judge.
"THE COURT: What judge?
"THE WITNESS: Um, I can't recall his name cause it was in Tuskegee.
"THE COURT: So you're telling the Court you were on unsupervised probation for stealing a car?
"THE WITNESS: They said I stole it but they found out, you know, I didn't steal the car. Okay. The damage that was [done] to the car, we agreed I paid the damage that was [done] on the car and I paid for the damage and they told me, you know, I was in custody of my mother, you know, for a certain period of time till I paid the money and after I paid the money.
"THE COURT: Why did you pay the damage if you didn't steal the car?
"THE WITNESS: Well, the car was in my hands at the time and the car got away from me and I was [held] responsible for it cause the keys [were given] to me.
"THE COURT: By who? The owner of the car?
"THE WITNESS: The owner.
"THE COURT: That's about as far as I know to go to find out.
"[DEFENSE COUNSEL]: Is my question proper now, Your Honor?
"THE COURT: I don't know whether it is or it isn't based on what he is saying."
Thereafter, when cross-examination was continued in the presence of the jury, the following transpired:
"Q. Mr. Trimble, have you been convicted of a crime involving moral turpitude?
"[PROSECUTOR]: Object, Your Honor. McElroy's is clear that's not the way to ask the question. Must be specific about the crime itself.
"THE COURT: Lay your predicate.
"Q. Have you been convicted of a crime of moral turpitude concerning a theft of an automobile?
"[PROSECUTOR]: Objection, Your Honor. That's improper way to ask it and I cite the Court to McElroy's at section
"THE COURT: Overruled. You may answer.
"Q. Mr. Trimble?
"A. Repeat that again?
"Q. Yes, sir. Have you been convicted of a crime involving moral turpitude concerning the theft of an automobile?
"A. Yes, I have.
"Q. Okay. And were you convicted of that, oh, about a year ago in Tuskegee?
"A. Yes.
"Q. All right. And were you put on probation?
"A. I didn't have a probation officer.
"[PROSECUTOR]: Objection, Your Honor. He's going too far now.
"THE COURT: Sustained.
"(WHEREUPON, the following occurred at the bench:)
"[DEFENSE COUNSEL]: Judge, it was my understanding the ruling was changed. Once we showed the offense we would be allowed to show he was on probation. He admitted the offense, he admitted the theft ofmoral turpitude involving theft of an automobile and I'd like to show he was on probation at this time.
"[PROSECUTOR]: Judge, not under impeachment.
"THE COURT: For what purpose?

*523 "[DEFENSE COUNSEL]: To impeach these statements, his testimony here today.
"THE COURT: How?
"[DEFENSE COUNSEL]: I think it shows he would be inclined to cooperate with the State.
"THE COURT: Sustain the objection unless you show me some law.
"[DEFENSE COUNSEL]: Okay. Thank you."
Thereafter, during the defense counsel's closing argument, he argued to the jury that Trimble's alleged conviction and probation provided the motive and bias for his testimony against the appellant.
In the present case, whether the witness was placed on probation arising out of a conviction in another county, i.e., Macon County, does not indicate possible bias in testifying for the State in a case arising out of Montgomery County.
"`It is generally held, even in jurisdictions where such evidence is not ordinarily admissible, that the fact that a witness has been arrested or charged with crime may be shown or inquired into where it would reasonably tend to show that his testimony might be influenced by interest, bias, or a motive to testify falsely. This principle has been held applicable in cases where criminal charges are pending in the same court against a witness for the prosecution in a criminal case at the time he testifies, as a circumstance tending to show that his testimony is or may be influenced by the expectation or hope that, by aiding in the conviction of the defendant, he would be granted immunity or rewarded by leniency in the disposition of his own case. But it has been held that the pendency of charges against the witness in another county or jurisdiction cannot be shown under this theory of admissibility.'"
Woodard v. State, 489 So.2d 1, 2-3 (Ala.Cr. App.1986), quoting 81 Am.Jur.2d Witnesses § 589, at pp. 597-98 (1976).
Because the district attorney's office in Montgomery County could not have made any recommendations toward his sentencing in Macon County, the appellant could not have been helped by testifying in the present case. Nor is there any indication in the record that he was promised any help. Therefore, because the "extent of cross-examination on irrelevant facts, for the purpose of testing bias or credibility of the witness's testimony, is a matter resting largely in the discretion of the trial court, [whose] ruling will not be disturbed unless it appears that it has abused its discretion to the prejudice of the complaining party," Beavers v. State, 565 So.2d 688, 689-90 (Ala.Cr.App.1990), we find no error in the instant case.

IX
The appellant argues that Trimble's testimony concerning out-of-court statements made to him by Lorenzo McCarter and by the appellant constituted inadmissible hearsay. During the trial, when the appellant objected to the admission of these statements on this ground, the prosecutor responded that the statements were admissible pursuant to the coconspirator exception to the hearsay rule. On appeal, as he did at trial, the appellant argues that the State did not establish the existence of a conspiracy prior to admitting these statements, and that, therefore, the exception did not and does not apply in the present case.
"`Where proof of a conspiracy exists, any act or statement made by an accused's co-conspirator in the commission of the crime, done or made before the commission of the crime, during the existence of the conspiracy and in furtherance of a plan or design is admissible against the accused.' Lewis v. State, 414 So.2d 135, 140 (Ala.Crim.App.), cert. denied, 414 So.2d 140 (Ala.1982). See also Nance v. State, 424 So.2d 1358 (Ala.Crim.App.1982). Statements of a co-conspirator may be admitted against another co-conspirator when the State presents prima facie evidence of the existence of a conspiracy. Lewis. It is well settled that a conspiracy need not be proved by direct and positive evidence and may be proved by circumstantial evidence. Lewis; Stinson v. State, 401 So.2d 257 (Ala.Crim.App.), cert. denied, 401 So.2d 262 (Ala.1981). In determining whether the State presented a prima *524 facie case, this court will consider the evidence in the light most favorable to the State. Hutcherson v. State, 441 So.2d 1048 (Ala.Crim.App.1983); Smelcher v. State, 385 So.2d 653 (Ala.Crim.App.1980)."
Salter v. State, 578 So.2d 1092, 1094 (Ala.Cr. App.1990), writ denied, 578 So.2d 1097 (Ala. 1991).
If the State presented sufficient evidence that McCarter and the appellant were involved in the conspiracy, evidence of McCarter's statements was admissible against the appellant, regardless of whether the prima facie showing of the existence of the conspiracy was made prior to the admission of the statements. The order of proof in this context is not a legal requisite.
"While it is preferable that a co-conspirator testify after the prima facie showing of the existence of a conspiracy, such order of proof is not mandatory. The order of proof requirement is for the purpose of expediting the trial and saving the valuable time of the trial court, rather than protecting or securing any supposed right a defendant might have. Morton v. State, 338 So.2d 423, 425 (Ala.Cr.App.), cert. denied, 338 So.2d 428 (Ala.1976); Conley [v. State, 354 So.2d 1172 (Ala.Cr.App.1977) ]."
Nance v. State, 424 So.2d 1358, 1365 (Ala.Cr. App.1982).
"Furthermore, `[e]ven if testimony relating statements made by confederates is objectionable as premature, in that independent proof of conspiracy has not been established before its admittance, subsequent proof of the conspiracy cures any error in the premature admission. Conley v. State, 354 So.2d 1172 (Ala.Cr.App.1977).' Tucker v. State, 454 So.2d 541, 546-47 (Ala.Cr.App.1983), reversed on other grounds, Ex parte Tucker, 454 So.2d 552 (Ala.1984)."
Creech v. State, 508 So.2d 302, 304 (Ala.Cr. App.1987). See also Inzer v. State, 447 So.2d 838, 848-49 (Ala.Cr.App.1983), cert. denied, 447 So.2d 850 (Ala.1984).
In the present case, prior to Trimble's testimony, the State introduced a witness's testimony that McCarter, Hood, and Sockwell were all present and all aided in the commission of the murder. The witness further testified that a female called McCarter's beeper just prior to the victim's death, stating that the victim was leaving. The State also presented testimony to the effect that McCarter and the appellant were sexually involved and that, when asked if McCarter could have committed the offense, the appellant responded that, "If he did kill him, I did not tell him to." There was further circumstantial evidence concerning the appellant's behavior upon learning that her husband was missing and, thereafter, dead. The appellant was able to become extremely calm for questioning, she gave a tour of her home to one of the officers, and, when asked how she was able to remain so calm, she acknowledged that she and the victim were experiencing marital problems and that he drank excessively and abused her. Thereafter, Trimble testified that, while he was at work with McCarter, McCarter got beeped and went to answer the call. McCarter then called Trimble to the telephone, saying that someone wanted to speak to him. Trimble testified that the person on the telephone identified herself as Louise Harris and that she told him that she needed "someone to do a job." She further stated that she was referring to killing someone and that the job had to be done prior to Friday because the victim was "spending into some of the insurance money and he was adding onto the house." Trimble testified that he recognized the voice as that of Louise Harris, whom he had met on previous occasions.
Because the conspiracy was clearly proved by the State, McCarter's statements to Trimble, asking him to commit the murder or to find someone who would commit the murder, were admissible. Harris's statement was admissible as an admission. See C. Gamble, McElroy's Alabama Evidence (4th Ed.1991) § 264.01(1).

X
The appellant argues that her conviction and sentence were obtained by emotional appeals to the suffering of the victim's family in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. Specifically, she argues that *525 the trial court erred by allowing the victim's sister to sit at the table for the prosecution during trial, and she claims that § 15-14-55, Code of Alabama 1975, which permits a victim's family member to sit at the table for the prosecution at trial, is unconstitutional in the context of a capital case. The appellant also argues the trial court erred by allowing the victim's sister to take the stand and to testify about allegedly irrelevant matters, and by allowing the State to otherwise emphasize the presence and suffering of the victim's family members. She also argues that the State sought to obtain a verdict and a sentence based on the victim's characteristics. The appellant cites to South Carolina v. Gathers, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989), and Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987).
The appellant's arguments, based on South Carolina v. Gathers and Booth v. Maryland must fail because both of these cases were specifically overruled by the United States Supreme Court in Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). See Smith v. State, 588 So.2d 561 (Ala.Cr.App.1991). See also McWilliams v. State, [Ms. 6 Div. 190, August 23, 1991], 1991 WL 184448 (Ala.Cr.App.1991).
The appellant's arguments concerning presence at the table for the prosecution of the victim's sister have been previously addressed by this court in Henderson v. State, 583 So.2d 276 (Ala.Cr.App.1990), affirmed, 583 So.2d 305 (Ala.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992).
"The presence of a victim seated at the counsel table for the prosecution is specifically provided for by `the Alabama Crime Victims' Court Attendance Act,' codified at §§ 15-14-50 et seq., Code of Alabama 1975. This act gives victims of a criminal offense the right to be present in the courtroom and seated alongside the prosecutor during the trial of the individual charged with that offense.
"The appellant argues, however, that this statute is unconstitutional generally, or alternatively, with regard to capital murder cases specifically. This argument has been previously addressedand rejectedby this Court in both capital as well as non-capital cases. In Crowe v. State, 485 So.2d 351, 362-63 (Ala.Cr.App. 1984), reversed on other grounds, 485 So.2d 373 (Ala.1985), cert. denied, 477 U.S. 909, 106 S.Ct. 3284, 91 L.Ed.2d 573 (1986), a capital murder case in which the death penalty was imposed, this Court specifically rejected the notion that the seating of the victim's widow at counsel table for the prosecution violated any constitutional rights of the accused. Likewise, in Anderson v. State, 542 So.2d 292, 304-05 (Ala.Cr.App.1987), writ quashed, 542 So.2d 307 (Ala.1989), cert. denied, 493 U.S. 836, 110 S.Ct. 116, 107 L.Ed.2d 77 (1989), a capital murder case in which life imprisonment without possibility of parole was imposed, we rejected this argument, holding as follows:
"`Furthermore, under § 15-14-55, Code of Alabama (1975), "a victim of a criminal offense shall be exempt from the operation of rule of court, regulation, or statute or other law requiring separation or exclusion of witnesses from court in criminal trials or hearings." Under § 15-14-56(a), "[w]henever a victim is unable to attend such trial or hearing or any portion thereof by reason of death... the victim's family may select a representative who shall be entitled to exercise any right granted to the victim, pursuant to the provisions of this article."...'"
Id. at 285-86. Therefore, the presence of the victim's family and evidence of victim impact did not constitute error.
Moreover, the appellant argues that the prosecutor erred by dwelling on and emphasizing the victim's role as a deputy sheriff, thereby prejudicing her case pursuant to Booth v. Maryland, supra and South Carolina v. Gathers, supra. However, as previously noted, these cases were overruled by Payne v. Tennessee, supra. Furthermore, the testimony concerning the victim's role as a police officer was relevant to the State's evidence presented during the guilt phase, as this case was initially brought on two counts, the second of which charged the *526 appellant with the capital murder of a law enforcement officer. § 13A-5-40(a)(5), Code of Alabama 1975.

XI
The appellant argues that her statements made to officers investigating her husband's death on the night of the murder were inadmissible, because, she argues, they were taken in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments and of the constitution of the State of Alabama. Specifically, the appellant argues that the statements she made to her husband's coworkers should have been held inadmissible because, she says, she was never given the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, the record indicates that the appellant was not subjected to a custodial interrogation so as to trigger the safeguards of Miranda v. Arizona, supra. When the appellant made these statements, she was present in her home, and the officers were there to inform her of her husband's death and to investigate any leads that the appellant may be able to provide, as well as to determine whether the victim had any weapons at his home. The appellant's body had just been discovered, and the officers had no reason to suspect that the appellant was in any way connected with the death.
"[C]ompliance with the procedural safeguards of Miranda is not necessary unless the confession is a product of `custodial interrogation' or `questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' Id. at 444, 86 S.Ct. at 1612 (footnote omitted). `It is settled that the safeguards prescribed by Miranda become applicable as soon as a suspect's freedom of action is curtailed to a "degree associated with formal arrest."' Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984) (quoting California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam)). The Supreme Court reiterated the reasons for the Miranda safeguard in Minnesota v. Murphy, 465 U.S. 420, 429-30, 104 S.Ct. 1136, 1143-44, 79 L.Ed.2d 409 (1984), as follows:
"`Not only is custodial interrogation ordinarily conducted by officers who are "acutely aware of the potentially incriminatory nature of the disclosures sought," Garner v. United States, [424 U.S. 648], at 657 [96 S.Ct. 1178 at 1184, 47 L.Ed.2d 370] [1976], but also the custodial setting is thought to contain "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." Miranda v. Arizona, 384 U.S. at 467 [86 S.Ct. at 1624]. See Schneckloth v. Bustamonte, 412 U.S. 218, 246-247 [93 S.Ct. 2041, 2057-2058, 36 L.Ed.2d 854] (1973). To dissipate "the overbearing compulsion... caused by isolation of a suspect in police custody," United States v. Washington, 431 U.S. 181, 187, n. 5, [97 S.Ct. 1814, 1819 n. 5, 52 L.Ed.2d 238] (1977), the Miranda court required the exclusion of incriminating statements obtained during custodial interrogation unless the suspect fails to claim the Fifth Amendment privilege after being suitably warned of his right to remain silent and of the consequences of his failure to assert it. 384 U.S., at 467-469, 475-477 [86 S.Ct. at 1624-1625, 1628-1629]. We have consistently held, however, that this extraordinary safeguard "does not apply outside the context of the inherently coercive custodial interrogations for which it was designed." Roberts v. United States, 445 U.S. [552] at 560 [100 S.Ct. 1358 at 1364, 63 L.Ed.2d 622] [1980].'
"It is the compulsive aspect of custodial interrogation, and not the strength or content of the officer's suspicion at the time the questioning was conducted, which led the Court to impose the Miranda requirements with regard to custodial questioning. Beckwith v. United States, 425 U.S. 341, 346-47, 96 S.Ct. 1612, 1616, 48 L.Ed.2d 1 (1976)....
". . . .
"Among the factors to be considered in making this determination are whether the suspect was questioned in familiar or, at least, neutral surroundings; the number of *527 law enforcement officers present at the scene; the degree of physical restraint of the suspect; the duration and character of the questioning; and how the suspect got to the place of questioning. See 1 LaFave and Israel, supra, at § 6.6(c). Other pertinent factors are the language used to summon the individual; the extent to which the person is confronted with evidence of guilt; and the degree of pressure applied to detain the individual. Hooks v. State, slip op. at 36 [534 So.2d 329 at 348] (quoting United States v. Wauneka, 770 F.2d 1434, 1438 (9th Cir.1985)). Furthermore, `[b]ecause the Court in Miranda expressed concern with the coerciveness of situations in which the suspect was "cut off from the outside world" and "surrounded by antagonistic forces" in a "police dominated atmosphere" and interrogated "without relent," circumstances relating to those kinds of concerns are also relevant on the custody issue.' 1 LaFave and Israel, supra, at § 6.6(f).
"In regard to the `very significant factor' of the place of the interrogation, id., it has been observed that `courts are much less likely to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings.' Id. at 6.6(e). The underlying rationale is that since the suspect is in familiar surroundings, he is not subjected to the same pressures as in the police-dominated atmosphere of the police station. Id.

"465 U.S. at 433, 104 S.Ct. at 1145 (footnote omitted)."
Finch v. State, 518 So.2d 864, 867-69 (Ala.Cr. App.1987).
In the present case, the appellant was questioned in her home by officers, some of whom had known the appellant socially. The appellant was not a suspect at the time and was not in any way restrained. She could not have reasonably believed that she was in custody. Any statements or comments that she made were willingly volunteered, within the protection of her own home.

XII
The appellant argues that the trial court erred in restricting his cross-examination of Freddie Patterson, who was present in the car with Lorenzo McCarter, Michael Sockwell, and Alex Hood when the victim was shot. Patterson was not charged in the present case, and the State presented evidence that he had no knowledge of the planned murder. The appellant argues that she should have been allowed to question the witness concerning an unrelated felony charge, which was pending against him at the time he was brought in for questioning in the present case. Patterson later pleaded guilty to a misdemeanor on this charge. The appellant argued that she had the right to question Patterson concerning this charge, as well as his other arrests and convictions, in order to demonstrate bias or self-interest.
The record reveals that, during the direct examination of Patterson, he testified that he went to the police station to talk to an officer concerning this case approximately four days after the other three men who had been present in the automobile had been arrested. He testified that he voluntarily went to the police department and "turned [himself] in and talked to them." He further testified that he was never charged in this case, but that, when he turned himself in, a charge of leaving the scene of an accident was pending against him in Montgomery County. He testified that he subsequently pleaded guilty to that charge. He further testified that he had been convicted of theft of property in the second degree, arising from an incident in Autauga County. Thereafter, during a conference outside the presence of the jury, the trial court held that the defense counsel would be allowed to question the witness concerning the conviction in order to show possible bias and self-interest. However, he ruled that the defense counsel would not be allowed to go into the details of the unrelated offense. Defense counsel responded that he had no intention of so questioning the witness. During a later conference outside the hearing of the jury, defense counsel stated that he had a copy of Patterson's "rap sheet" and that he wished to question the witness concerning the convictions. Defense stated that he should be permitted to do so, because the State had previously "opened the door" to this subject by asking the witness whether *528 he had ever been in trouble with the law. The trial court held that the State's question concerned felony convictions, and the trial court noted that he had "allowed you [the defense] to go into theby prior rulingto the leaving the scene of an accident, but I do not think that that opened it up to any other misdemeanor arrest and so forth and so on." Defense counsel responded:
"We did not go into it. This is their question. The prosecution asked this question; we did not ask this question. We did not ask the question, and we think it's part of her constitutional rights, on her right of confrontation, her right of due process under protection of law to be able to go into the subject which the prosecution has raised, particularly on a key witness like this."
Moreover, the defense counsel was allowed to argue during his closing argument that the witness's involvement in the crime, arrest under suspicion of the charges, and prior convictions all tended to prove his bias and self-interest in testifying for the State.
"`"The scope of cross-examination in a criminal proceeding is within the discretion of the trial judge and it is not reviewable except for the trial judge's prejudicial abuse of discretion. Jackson v. State, Ala.Cr.App., 353 So.2d 40, cert. denied, 353 So.2d 48 (1977). McFerrin v. State, Ala.Cr.App., 339 So.2d 127 (1976). The right to a thorough and sifting cross-examination of a witness does not extend to matters that are collateral or immaterial and the trial judge is within his discretion in limiting questions which are of that nature. McLaren v. State, Ala.Cr.App., 353 So.2d 24, cert. denied, 353 So.2d 35 (1977); McDonald v. State, Ala.Cr.App., 340 So.2d 103 (1976)."
"`See also Burton v. State, 487 So.2d 951 (Ala.Cr.App.1984). While rather wide latitude is allowed on cross-examination, the court has reasonable discretion in confining the examination to prevent diversion to outside issues.'"
Steeley v. State, 622 So.2d 421 (Ala.Cr.App. 1992), quoting Beavers v. State, 565 So.2d 688, 690 (Ala.Cr.App.1990).
In McMillian v. State, 594 So.2d 1253 (Ala.Cr.App.1991), remanded on other grounds, 594 So.2d 1288 (Ala.1992) this court held that the trial court had not abused its discretion in limiting the defendant's cross-examination of a key State's witness, where the defendant had sought to ask the witness about the following subjects: how long he had spent in prison for a forgery conviction, "an unrelated pending murder case," and when the witness intended to meet with his attorney and enter his guilty plea in the instant case. This court held:
"These questions sought to elicit collateral and irrelevant matter; therefore, the trial court did not abuse its discretion in sustaining the objections to them. The evidence of [the witness's] criminal record, which was substantial, was before the jury. The jury was made aware that he had been convicted and had served time for burglary, forgery, and theft. The jury was also aware that [the witness] had made a deal with the State to enter a plea of guilty to a lesser charge at a later time in return for his testimony."
McMillian v. State, supra, at 1261-62.
Even if the prosecutor, in fact, "opened the door" to the appellant's questions concerning these unrelated charges and convictions against the witness, and even in light of the witness's key role as one of the two main nonaccomplice witnesses against the appellant, any error in limiting this cross-examination was harmless.
"`[A] party is given wide latitude on cross-examination to test a witness's partiality, bias, or interest.' Perry v. Brakefield, 534 So.2d 602, 608 (Ala.1988). The rule in this state, notwithstanding the general principle concerning the development of the interest or bias of a witness, is that the range of cross-examination rests largely in the discretion of the trial court and that the court's rulings will not be disturbed unless it clearly appears that the defendant was prejudiced by the rulings. However, `where the witness' testimony is important to determination of the issues being tried, there is little, if any, discretion in the trial judge to disallow cross-examination on matters which tend to indicate the *529 bias of the witness.' Wells v. State, 292 Ala. 256, 258, 292 So.2d 471, 473 (1973).
"... `"[T]he extent to which a witness may properly be cross-examined as to collateral circumstances for the purpose of showing bias depends in some instances upon the importance of his testimony, and especially upon whether such testimony is of a nature to be seriously affected by prejudice, bias, or hostility."' Louisville & N.R. v. Martin, 240 Ala. 124, 131, 198 So. 141, 147 (1940) (emphasis in original). `[I]t is an abuse of discretion and a violation of constitutional rights to deny to a defendant the right to cross-examine a witness at all on a "subject matter relevant to the witness's credibility," such as the witness's possible motive for testifying falsely.' United States v. Brown, 546 F.2d 166, 169 (5th Cir.1977)....
". . . .
"Although we are extremely reluctant to hold that any improper limitation of cross-examination constitutes harmless error, we are convinced beyond any reasonable doubt that the error in this case did not contribute to the verdict of the jury. See Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Violations of the confrontation clause of the Sixth Amendment are subject to harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).
"`[W]e hold that the constitutionally improper denial of the defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to Chapman [v. California, 386 U.S. 18, 87 S.Ct. 824], harmless-error analysis. The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. Those factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.'
"Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438."
Hooper v. State, 585 So.2d 142, 145-46 (Ala. Cr.App.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1295, 117 L.Ed.2d 517 (1992).
In the present case, in light of the overall strength of the prosecution's case, any error by the trial court in limiting this cross-examination was harmless because the witness admitted that he had been in trouble with the law and that he had a criminal record; and the appellant was allowed to cross-examine the witness concerning his previous conviction, which was pending at the time of his questioning.

XIII
The appellant argues that the State introduced and relied on prejudicial evidence of the appellant's bad character in order to obtain a conviction against her. Specifically, the appellant refers to evidence that she, a married woman, was having an affair with codefendant Lorenzo McCarter. The appellant argues that the probative value of this evidence was greatly outweighed by its prejudicial effect. However, it is clear from the record and from the evidence introduced at trial that the appellant's relationship with Lorenzo McCarter was the cornerstone of the conspiracy and established the motive for the murder.
"In cases based largely on circumstantial evidence, a rather wide range of evidence is allowed in developing circumstances tending to show motive on the part of the accused. Turner v. State, 224 Ala. 5, 140 So. 447 (1931); Chambliss v. State, 373 So.2d 1185 (Ala.Cr.App.), cert. denied, 373 So.2d 1211 (Ala.1979). Where the evidence is in conflict as to whether the accused did the act, or is partially or wholly circumstantial upon that issue, the question of motive becomes a leading inquiry. Harden v. State, 211 Ala. 656, 101 So. 442 *530 (1924). While not alone sufficient to justify a conviction, motive may strengthen circumstantial evidence. Dolvin v. State, 391 So.2d 666 (Ala.Cr.App.1979), affirmed, 391 So.2d 677 (Ala.1980). Evidence of a particular relationship between the accused and another person, when combined with other factors, may be relevant in proving motive and therefore be admissible. Turner, supra.

"As our Supreme Court stated in McDonald v. State, 241 Ala. 172, 174, 1 So.2d 658 (1941): `Testimony going to show motive, though motive is not an element of the burden of proof resting on the State, is always admissible.' (Emphasis added.) And as we held in Baalam v. State, 17 Ala. 451, 453 (1850), `When it is shown that a crime has been committed and the circumstances point to the accused as the guilty agent, then proof of a motive to commit the offense, though weak and inconclusive evidence, is nevertheless admissible.' See also McClendon v. State, 243 Ala. 218, 8 So.2d 883 (1942); Spicer v. State, 188 Ala. 9, 65 So. 972 (1914). Even slight evidence to show a motive for doing the act in a criminal case is not to be excluded, but should be left to the consideration of the jury. Arnold v. State, 18 Ala.App. 453, 93 So. 83 (1922).
"Further in Earnest v. State, 21 Ala. App. 534, 536, 109 So. 613 (1926), the court held the following:
"`[I]t is permissible in every criminal case to show that there was an influence, an inducement, operating on the accused, which may have led or tempted him to commit the offense. It may spring from the lust of gain, or the gratification of an unlawful passion, from animosity, ill will, hatred, or revenge. The extent or magnitude of such motive, whether great or small, is also a proper inquiry....'"
Kelley v. State, 409 So.2d 909, 913-14 (Ala. Cr.App.1981) (wherein testimony of the defendant's involvement with a female employee was properly admitted as tending to show motive in a case of embezzlement).
Thus, in the present case, the evidence concerning the appellant's extramarital affair with one of her codefendants was relevant as evidence toward establishing the conspiracy and the motive for the murder.

XIV
The appellant argues that her rights under the Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, and her rights under the Alabama constitution, were violated by the introduction of prejudicial and gruesome photographs of the deceased.
"As a general rule, photographs are admissible in evidence if they tend to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, or to corroborate or disprove some other evidence offered or to be offered, and their admission is within the sound discretion of the trial judge. Photographs which depict the character and location of external wounds on the body of a deceased are admissible even though they are cumulative and based upon undisputed matters. The fact that a photograph is gruesome and ghastly is no reason to exclude its admission into evidence, if it has some relevancy to the proceedings, even if the photographs may tend to inflame the jury."
Magwood v. State, 494 So.2d 124, 141 (Ala. Cr.App.1985), affirmed, 494 So.2d 154 (Ala. 1986) (citations omitted).
In the present case, the photographs corroborated certain State's evidence and illustrated certain witnesses' testimony. Moreover, the photographs served to prove the victim's identity, show the nature and extent of his wounds, depict the condition of the scene where the body was found, and depicted the condition and existence of certain items of evidence, as well as their location. We find no abuse of discretion by the trial court in the admission of these photographs. Grice v. State, 527 So.2d 784 (Ala.Cr.App. 1988).

XV
The appellant further argues that the State introduced photographs of the victim, while he was still alive, in order to obtain *531 a verdict and sentence based on passion and prejudice, in violation of her rights to a fair trial and sentencing. She argues that the photographs of the victim while he was alive were irrelevant to any issue before the jury and introduced solely to inflame the jury. The single picture of the victim, prior to his murder, was relevant as it tended to identify the victim, especially in light of the condition of the victim's face after having been shot. As such, the introduction of this photograph during the guilt phase was not an Eighth Amendment violation. See Willis v. Kemp, 838 F.2d 1510, 1521 (11th Cir.1988), cert. denied, 489 U.S. 1059, 109 S.Ct. 1328, 103 L.Ed.2d 596 (1989).
Moreover, the introduction of this photograph during the sentencing phase was not error. "It is not necessary that the sentencing decision be made in the context in which the victim is a mere abstraction." Brooks v. Kemp, 762 F.2d 1383, 1409 (11th Cir.1985) (en banc), vacated, 478 U.S. 1016, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986).

XVI
The appellant argues that she was denied a fundamentally fair trial and sentencing, due to several instances of prosecutorial misconduct. Those prosecutorial comments made during the guilt phase will be addressed under subheading "A" and those prosecutorial comments made during the sentencing phase will be addressed under subheading B.

A
The appellant cites a number of comments made by the prosecutor during closing argument which she alleges were so prejudicial as to mandate reversal. Only two of these instances were objected to; the remaining are raised for the first time on appeal, and, therefore, must be analyzed under the "plain error" rule. Rule 45A, A.R.App.P. The objected-to comments concern the prosecutor's reference to "open file discovery," and her comment that the testimony of State's witness Trimble and that of State's witness McCarter matched.
The comment made by the prosecutor concerning the State's open file discovery was as follows:
"You saw her [the appellant's] testimony, and you saw she had her story down pretty good. She's had what, eighteen months, eighteen months since she started planning this. Fourteen-sixteen months since she's been arrested. She's had nothing to do but get her story straight, with the advantage of having every piece of evidence the State had through its resources, she had. So you see, she had our resources, too, didn't she?and the advantage of being able to concoct her story to fit as best it could. The State has
"[DEFENSE COUNSEL]: Objection, Your Honor. That's not the evidence andit's not a legitimate inference from the evidence.
"THE COURT: Let's move on. It's argument."
Prior to this comment, during defense counsel's closing argument, the following transpired:
"And how do you prove your innocence? Now remember, when you think about that, think of all the resources of the State. You've got Investigators, Sheriff's Department, you've got the Police Department, you've got numerous resources to gather evidence. Think about all those resources being focused on one little Louise Harris. Think about the overwhelming burden that is to one little individual with limited resources. Think about your friend or whoever was charged with that type offense. Have some compassion for them."
The State's reference to the fact that the appellant had access to all of the State's evidence was a proper reply in kind to the appellant's argument that she had very limited resources, as opposed to those of the State. See Kuenzel v. State, 577 So.2d 474, 503 (Ala.Cr.App.1990), affirmed, 577 So.2d 531 (Ala.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991), citing Ex parte Rutledge, 482 So.2d 1262, 1264 (Ala. 1984). See also Salter v. State, 578 So.2d 1092 (Ala.Cr.App.1990), cert. denied, 578 So.2d 1097 (Ala.1991); Smith v. State, 588 So.2d 561, 572 (Ala.Cr.App.1991).
*532 Moreover, even if this comment could be considered error as a comment on matters not in evidence, the comment would constitute harmless error. See Kuenzel v. State, 577 So.2d 474, 493 (Ala.Cr.App.1990). Cf. Chatom v. State, 591 So.2d 101 (Ala.Cr.App. 1991).
The comment by the prosecutor that the two State's witnesses, Trimble and McCarter, gave testimony that "matched" is a proper inference from the evidence, as these witnesses did not contradict each other, during their testimony, in any significant regard.
"Although counsel has `no right to create evidence by his argument,' Davis v. State, 49 Ala.App. 587, 590, 274 So.2d 360, 363 (1972), cert. denied, 290 Ala. 364, 274 So.2d 363 (1973), `counsel may draw any inference which the facts tend to support.' Brothers v. State, 236 Ala. 448, 452, 183 So. 433, 436 (1938). `Counsel for the State and defendant are allowed a rather wide latitude in drawing their deductions from the evidence.' Arant v. State, 232 Ala. 275, 279, 167 So. 540, 543 (1936). `Counsel has a right to argue any reasonable inference from the evidence or lack of evidence ... and to draw conclusions from the evidence based on their own reasoning.' Roberts v. State, 346 So.2d 473, 476 (Ala.Cr.App.), cert. denied, 346 So.2d 478 (Ala.1977). `Trial judges ordinarily are loath to limit inferential argument which has any connection with the evidence even though far-fetched.... So long as counsel does not travel out of his case and confines statements to reasonable inferences deducible from the evidence, he should not be controlled.' Roberts, 346 So.2d at 477. `[I]t would be dangerous to accord the presiding judge the right and power to intervene and declare authoritatively when an inference of counsel is or is not legitimately drawn. This is for the jury to determine, if there be any testimony on which to base it.' Cross v. State, 68 Ala. 476, 483 (1881)."
Kuenzel v. State, supra at 493-94.
The other prosecutorial comments made during the guilt phase that the appellant alleges are error were not objected to and therefore to be considered on appeal must amount to "plain error," or error that has or probably has "adversely affected the substantial right of the appellant." Rule 45A, A.R.App.P. The appellant refers to 10 allegedly improper comments by the prosecutor during his closing argument in the guilt phase.
The prosecutor's comment that State's witness Patterson had no reason to lie and that State's witness Trimble had nothing to gain were proper inferences from the evidence. The evidence showed that Patterson was not an accomplice to the murder and that Trimble was in no way suspected of being involved. Moreover, there is no evidence of any bargains made in exchange for Trimble's testimony. These comments by the prosecutor were also proper as reply in kind to defense counsel's previous argument that both witnesses were biased and had a motive for testifying for the State.
The appellant also argues that the prosecutor's statement that Lorenzo McCarter would "have his day in court" was not a proper inference from the evidence. However, the record indicates that the agreement made by the State, in order to gain McCarter's testimony, was that the State would not seek the death penalty in McCarter's capital murder trial. There was no evidence that the charges against McCarter would be dropped or that McCarter would plead guilty to the capital offense. Moreover, even if McCarter were to plead guilty, the State would still have to prove his guilt. See § 13A-5-42, Code of Alabama 1975.
The prosecutor's reference to the fact that Alex Hood and Michael Sockwell invoked their Fifth Amendment right to remain silent was made pursuant to her explanation of the agreement made by the State to obtain McCarter's testimony. Although the appellant argues that this comment was error under Ex parte Tomlin, 540 So.2d 668 (Ala.1988), the present case is readily distinguishable. In Ex parte Tomlin, the Alabama Supreme Court held that it was prosecutorial error for the State to repeatedly refer during closing argument to the fact that the defendant's wife could not be called to testify. The Court held that this comment implied *533 that the defendant's wife was not testifying because she knew something that would implicate her husband. In the present case, the two witnesses took the stand and refused to testify in front of the jury. Moreover, no close relationship exists between these witnesses and the appellant, which would lead to the inference that these witnesses knew that the appellant was guilty and were refusing to testify in order to protect her. More reasonably, these witnesses' refusal to testify would have been a matter of self-protection. Because the jury was well aware of the fact that the two witnesses refused to testify, the prosecutor was merely commenting on the evidence.
The comment by the prosecutor that the appellant moved out of her mother-in-law's house so that she could have the privacy in which to carry on an affair was a reasonable inference from the evidence. There was evidence presented that the appellant was very unhappy with the fact that she was living with the victim's mother, and there was also evidence that the appellant had been involved in other extramarital affairs prior to the one with Lorenzo McCarter.
The prosecutor's comment that the appellant had possibly been drinking or was otherwise intoxicated when she was called concerning the victim's whereabouts on the night of his murder was a proper inference from the evidence. There was testimony that the appellant's speech was slurred and sluggish during the telephone call and, when questioned the witness, who had placed the call, stated that he was uncertain whether this could have been the result of a state of intoxication.
The prosecutor's comment that the appellant was "begging ... to frame Freddie Patterson" was a proper reply in kind to defense counsel's argument that Patterson was, in fact, an accomplice and should have been charged in the present case.
The prosecutor's comment that the appellant wanted the victim killed by Friday because of a car loan was also a proper inference from the evidence. Trimble testified that the appellant had stated she wanted the victim killed by Friday because he was dipping into his insurance policies in order to build an addition onto their house. There was also testimony that the appellant knew that her husband was in the process of purchasing an automobile for her daughter. The prosecutor further stated that the car loan did not "come through" as a reply in kind to defense counsel's argument during his closing statement, wherein he stated:
"Look at this loan application that they've made a big to-do over. Take this back and look at it. Sergeant Harris was buying a car for Louise's daughter. Eight hundred and fifty dollars. They have been trying to tell you all this time she had to get him killed before he got the eight hundred and fifty dollars. Now this is real important to them. They struggled to get this in. Theyyou know, they brought witnesses up here and they got it in and here it is. Take this application back and look at it. If you don't know from your own experience, this application is going to tell you. When you go down to get a loan at the Credit Union you have credit life on it, and it's right therecredit life. Now what does that mean? We all know if Sergeant Harris had gotten the eight hundred and fifty dollars and then been killed, the loan would have been paid for and they would have had another car in the family."
The prosecutor's comments that there was no evidence that McCarter had a criminal conviction and that McCarter had made consistent statements concerning the murder since his arrest were proper inferences from the evidence. The record indicates that there was no evidence before the jury of any convictions, although McCarter had admitted that Harris got him "out" when he had been charged with driving under the influence. Moreover, McCarter's statements had not significantly changed since he had admitted his guilt.
The prosecutor's statement that Trimble did not change his testimony concerning his voice identification of Harris was a proper argument. Although Trimble initially testified that the appellant was not identified as "the voice" on the telephone, *534 subsequently, during a conference outside the presence of the jury, Trimble testified that he had misunderstood the trial court's initial question concerning the identification. Although an inference could be drawn that the witness intentionally changed his testimony, it is also possible that he misunderstood the question.
"`Counsel in the trial of any lawsuit has the unbridled right (to be sure, the duty) to argue the reasonable inferences from the evidence most favorable to his client.' Ex parte Ainsworth, 501 So.2d 1269, 1270 (Ala.1986) (footnote omitted). `[T]he rule is that counsel are allowed considerable latitude in drawing their deductions from the evidence in argument to the jury.' Espey v. State, 270 Ala. 669, 674, 120 So.2d 904, 907 (1960)."
Kuenzel, supra at 492.
Similarly, the prosecutor was merely arguing on behalf of his "client" when he requested that the jurors not consider the lesser-included offense of murder. The prosecutor, as an advocate, has the right to make such arguments to the jury.

B
The appellant cites several allegedly improper comments by the prosecutor during the sentencing hearing before the trial judge, which she argues resulted in a jury verdict override and in imposition of the death sentence, based on improper considerations. The appellant raised no objections to any of the now-cited comments made during the prosecutor's closing argument in this sentencing hearing.
"`While this failure to object does not preclude review in a capital case, it does weigh against any claim of prejudice.' Ex parte Kennedy, 472 So.2d [1106] at 1111 (emphasis in original). `This court has concluded that the failure to object to improper prosecutorial arguments ... should be weighed as part of our evaluation of the claim on the merits because of the suggestion that the defense did not consider the comments in question to be particularly harmful.' Johnson v. Wainwright, 778 F.2d 623, 629 n. 6 (11th Cir.1985), cert. denied, 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987). `Plain error is error which, when examined in the context of the entire case, is so obvious that failure to notice it would seriously affect the fairness, integrity, and public reputation of the judicial proceedings.' United States v. Butler, 792 F.2d 1528, 1535 (11th Cir.), cert. denied, 479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986)."
Kuenzel v. State, supra at 489.
The prosecutor commented that the aggravating circumstance that the capital offense was committed for pecuniary gain was established by the jury's verdict of guilt on the capital count. This argument is a correct statement of the law. See Haney v. State, 603 So.2d 368 (Ala.Cr.App.1991) ("where a defendant has been convicted of the capital offense of murder for hire, even though that person was the hirer and was convicted of the offense as an accomplice pursuant to the complicity statute, the aggravating circumstance that the capital offense was committed for pecuniary gain is established as a matter of law").
The prosecutor's argument that the trial court should not consider the testimony of the appellant's five character witnesses, because none of them knew of her affair with Lorenzo McCarter was not an improper comment. The evidence indicates that each of the witnesses stated that they were unaware that the appellant was having the extramarital affair with McCarter. "The prosecutor has the right to present his impressions from the evidence. He may argue every matter of legitimate inference and may examine, collate, sift, and treat the evidence in his own way." Donahoo v. State, 505 So.2d 1067, 1072 (Ala.Cr.App.1986). Further, the prosecutor's argument to the trial court could be understood as a comment that the witnesses must not have known the appellant very well, if they were unaware of the affair.
Moreover, any inferential argument by the prosecutor that the appellant should be sentenced to death because she was not a good person would be a legitimate argument based on evidence that she hired people to murder her husband for money and to legitimize an extramarital affair.
*535 The next allegation of error by the prosecutor concerned her argument to the trial court that he not consider the credibility of certain State's witnesses, particularly McCarter, in that the jury had already considered that evidence and arrived at a verdict of guilt. Essentially, the prosecutor argued that the trial court not consider the credibility of certain State's witnesses as a nonstatutory mitigating factor. This comment does not violate Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), which held that a trial court must consider such nonstatutory mitigating circumstances as aspects of the defendant's character and background, as well as certain circumstances of the offense. As stated by the United States Supreme Court in Franklin v. Lynaugh, 487 U.S. 164, 174, 108 S.Ct. 2320, 2327, 101 L.Ed.2d 155 (1988):
"Our edict that, in a capital case, `"the sentencer.... [may] not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense,'" Eddings v. Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 874, 71 L.Ed.2d 1 (1982) (quoting Lockett, 438 U.S., at 604, 98 S.Ct., at 2964), in no way mandates reconsideration by juries, in this sentencing phase, of their `residual doubts' over a defendant's guilt. Such lingering doubts are not over any aspect of petitioner's `character,' `record,' or a `circumstance of the offense.' This Court's prior decisions, as we understand them, fail to recognize a constitutional right to have such doubts considered as a mitigating factor."
"Our cases do not support the proposition that a defendant who has been found to be guilty of a capital crime beyond a reasonable doubt has a constitutional right to reconsideration by the sentencing body of lingering doubts about his guilt. We have recognized that some states have adopted capital sentencing procedures that permit defendants in some cases to enjoy the benefit of doubts that linger from the guilt phase of the trial, see Lockhart v. McCree, 476 U.S. 162, 181, 106 S.Ct. 1758, 1768, 90 L.Ed.2d 137 (1986), but we have never indicated that the Eighth Amendment requires states to adopt such procedures. To the contrary, as the plurality points out, we have approved capital sentencing procedures that preclude consideration by the sentencing body of `residual doubts' about guilt. See Ante, [487 U.S. at 173 n. 6, 108 S.Ct.], at 2327, n. 6."
"Our decisions mandating jury consideration of mitigating circumstances provide no support for petitioner's claim because `residual doubt' about guilt is not a mitigating circumstance. We have defined mitigating circumstances as facts about the defendant's character or background, or the circumstances of the particular offense, that may call for a penalty less than death. [citations omitted]. `Residual doubt' is not a factor about the defendant or the circumstances of the crime. It is instead a lingering uncertainty about facts, a state of mind that exists somewhere between `beyond a reasonable doubt' and `absolute certainty.'"
Id., at 187-88, 108 S.Ct. at 2334-35.[4]
The appellant argues that the prosecutor improperly urged the trial court to disregard the jury's verdict. However, the record indicates that the prosecutor stated, "[T]he Court should consider the jury's verdict"; however, she urged the trial court to override the jury's recommended sentence because, she argued, it was based on emotion rather than on evidence. The prosecutor may formulate reasonable arguments from the evidence. Emotion, sympathy, and passion are not proper sentencing considerations. See Beck v. State, 396 So.2d 645, 663 (Ala.1980). Moreover, a jury verdict override is permitted in Alabama by § 13A-5-47(e), Code of Alabama 1975, and such a statute has been held constitutional. See Proffitt v. Florida, 428 U.S. 242, 252, 96 S.Ct. 2960, 2966, 49 L.Ed.2d 913 (1976).
The appellant argues that the prosecutor improperly argued that the appellant should be sentenced to death because she *536 had not been "battered" by the victim and therefore the fact that she had been abused could not be considered as a nonstatutory mitigating circumstance. However, the prosecutor's comment referred to the fact that the appellant's motive was strictly money or legitimization of an extramarital affair, rather than because she had been abused by the victim. The record indicates that evidence had been introduced during the guilt phase of the trial that the appellant was battered and abused by the victim. The prosecutor's comment was proper argument against a nonstatutory mitigating circumstance that could have been considered by the trial court; i.e., because the appellant's background is a proper consideration under Lockett v. Ohio, supra, the fact that she had or had not been battered by her husband could have been considered by the trial court in sentencing.
The appellant also argues that the prosecutor improperly commented on the appellant's lack of remorse. However, this comment was a proper inference from the evidence, because testimony had been introduced at trial that the appellant's reaction to being informed of her husband's death was so unemotional that she was questioned concerning her reaction. Her response was that she and the victim had suffered marital problems.
The appellant argues that the prosecutor improperly referred to her father's death, which was irrelevant to the instant case, and inferred that he was killed in the same manner as the victim in the present case. The following occurred during the closing arguments by the prosecutor:
"[PROSECUTOR]: The Court had asked earlier about the testimony about her father dying and the circumstances surrounding that. We would refer the Court to the notes and, of course, the transcript is not ready, but the Court might could take its mind back to the testimony of Dorinda Hinton, the Sheriff's Investigator. Just before cross-examination, Investigator Hinton told the jury and the Court about her conversations with the defendant, and in addition to the comments about McCarter was a wonderful lover, she was asked and talked about what she said about her father. And Hinton testified before this Court, that this defendant, the night he was killed and she was informed of it, said my father was killed just like that. And, of course, our facts are the Deputy Sheriff is killed in an ambush by a shotgun. Not only that, but I believe the testimony will show that when this defendant testified she was asked on cross-examination if she said that and if it were true and I believe the record would show that she did say that. So that's the basis, from our perspective, of where that evidence came from. Certainly we are not asking this Court to find her guilty of her father's death, that's not why it was brought out, but to show her mental state, her emotional state at the time she was informed of his death."
The record indicates that during the course of the trial, State's witness Dorinda Hinton testified that, after being told of her husband's death, the appellant stated to Hinton that her father had been killed like the victim. Subsequently, during defense counsel's direct examination, the appellant testified that she was in her "20's" when her father died by gunshot. Thus, the prosecutor's argument was a correct comment on the evidence. Moreover, although the reference to this evidence may have unduly prejudiced the appellant, any error did not rise to the level of "plain error." "`Plain error is error which, when examined in the context of the entire case, is so obvious that failure to notice it would seriously affect the fairness, integrity, and public reputation of the judicial proceedings.'" Kuenzel v. State, supra, at 489, quoting United States v. Butler, 792 F.2d 1528, 1535 (11th Cir.), cert. denied, 479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986).

XVII
The appellant argues that the State failed to establish sufficient evidence to sustain her conviction of capital murder and her sentence of death. Specifically, the appellant argues that the State failed to satisfy its burdens in two respects: the State, she argues, failed to provide sufficient corroboration of accomplice *537 testimony, and failed to prove that the murder was committed for pecuniary gain.
The record indicates that neither Patterson nor Trimble were accomplices. In the present case the question of complicity constituted a question of fact for the jury to decide and, by its verdict, it is clear that it found sufficient corroboration of accomplice testimony. Patterson was present with the majority of the coconspirators during the commission of the offense. He testified to a female voice broadcasting over McCarter's beeper the message "He is leaving." Trimble testified that he was solicited by the appellant to commit the offense. Moreover, she was implicated by her conduct upon learning of her husband's death and by her statement that, if McCarter committed the offense, she did not tell him to do so. Moreover, she admitted to her affair with McCarter and to having had marital problems with the victim.
"A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with such commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."
§ 12-21-222, Code of Alabama 1975. The State presented corroborative evidence to connect the appellant with the commission of the offense.
Furthermore, the State presented sufficient evidence to support the pecuniary gain element of the capital charge. Trimble testified that the appellant told him on the telephone that the murder should be committed by Friday to prevent the victim from spending the insurance money. McCarter testified that the appellant provided $100 initially to pay Sockwell and Hood to commit the murder, with the promise of more when the appellant collected the insurance money.
Moreover, the State also provided sufficient evidence that the appellant hired Sockwell and Hood to murder her husband. Thus, under both theories, the State presented sufficient evidence to support the conviction and the aggravating circumstance of murder for pecuniary gain.

XVIII
The appellant argues that the trial court's instructions during the guilt phase of her trial, violated the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, §§ 1, 6, and 15 of the Constitution of Alabama. The record indicates that the appellant failed to object to any of these allegations of error and, therefore, these instances must be analyzed pursuant to the "plain error" doctrine.
The appellant argues that the trial court failed to instruct the jury that the State was required to prove that she knew about her husband's insurance and retirement benefits before she could be found guilty of committing murder for pecuniary gain. The record indicates that the trial court charged the jury that it must be convinced that the appellant committed the intentional murder and that the murder was committed for a pecuniary gain or pursuant to a contract for hire. This language substantially tracks the language of § 13A-5-40(a)(7), Code of Alabama 1975. "A charge which tracks the identical language of the statute is proper. Jordan v. State, 17 Ala.App. 575, 87 So. 433, cert. denied, 205 Ala. 114, 87 So. 434 (1920)." King v. State, 595 So.2d 539 (Ala.Cr.App. 1991). Moreover, charges which track the language of a Code section are sufficient. See generally Salter v. State, 578 So.2d 1092, 1096 (Ala.Cr.App.1990), writ denied, 578 So.2d 1097 (Ala.1991).
Although the appellant argues that the trial court did not adequately instruct the jury on the lesser-included offense of murder, a review of the trial court's entire charge reveals that the appellant's argument is without merit. The trial court instructed the jury on intentional murder, as a separate offense, and emphasized the distinction between the two offenses. Ex parte Kennedy, 472 So.2d 1106 (Ala.1985), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985).
Although the appellant argues that the trial court erred in failing to charge the *538 jury on the lesser-included offense of reckless murder, clearly the evidence would not have supported such a charge. Reckless murder requires conduct that creates a great risk of death to human life in general. Fisher v. State, 587 So.2d 1027 (Ala.Cr.App.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992). The evidence presented in the present case shows that the murder was committed after laying in wait for and ambushing Isaiah Harris. Therefore, a charge on universal malice or reckless murder would have been improper.
The appellant claims that the trial court failed to instruct the jury that a particularized intent to kill must be proved beyond a reasonable doubt. However, a review of the trial court's entire charge reveals that the jury was charged as to the requisite particularized intent to kill. Similarly, although the appellant argues that the trial court's instruction on corroboration of accomplice testimony was insufficient, a review of the charge establishes that the appellant's claim is without merit.
The other claimed errors by the appellant in the trial court's oral charge to the jury, are either legally incorrect[5] or do not constitute plain error.[6]

XIX
The appellant contends that the trial court's imposition of the death sentence, after the jury returned a verdict of life imprisonment without parole, violated her constitutional rights. Generally, the appellant argues that the trial court's override of the jury's recommended verdict was standardless and arbitrary. However, the constitutionality of Alabama's statutory sentencing scheme was approved by the United States Supreme Court in Proffitt v. Florida, 428 U.S. 242, 252, 96 S.Ct. 2960, 2966, 49 L.Ed.2d 913 (1976), and the jury verdict override provisions were specifically found constitutional in Spaziano v. Florida, 468 U.S. 447, 457-67, 104 S.Ct. 3154, 3160-66, 82 L.Ed.2d 340 (1984). Pursuant to § 13A-5-47(e), Code of Alabama 1975, "[t]he trial court and not the jury is the sentencing authority". Freeman v. State, 555 So.2d 196, 213 (Ala.Cr.App. 1988), affirmed, 555 So.2d 215 (Ala.1989), cert. denied, 496 U.S. 912, 110 S.Ct. 2604, 110 L.Ed.2d 284 (1990). "The trial court is authorized to reject the jury's recommendation of life without parole when imposing sentence and to impose a death sentence." Id. See also Tarver v. State, 500 So.2d 1232, 1251 (Ala.Cr.App.), affirmed, 500 So.2d 1256 (Ala. 1986), cert. denied, 482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987); Thompson v. State, 542 So.2d 1286, 1300 (Ala.Cr.App. 1988), affirmed, 542 So.2d 1300 (Ala.1989), cert. denied, 493 U.S. 874, 110 S.Ct. 208, 107 L.Ed.2d 161 (1989).
Although the appellant argues that the jury verdict override standards adopted by Florida in Tedder v. State, 322 So.2d 908, 910 (Fla.1975) are constitutionally required, this court has previously rejected that argument. See White v. State, 587 So.2d 1218 (Ala.Cr. App.1990), affirmed, 587 So.2d 1236 (Ala. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 979, 117 L.Ed.2d 142 (1992), citing Ex parte Jones, 456 So.2d 380, 381-82 (Ala.1984), cert. denied, 470 U.S. 1062, 105 S.Ct. 1779, 84 L.Ed.2d 838 (1985). See also Hadley v. State, 575 So.2d 145 (Ala.Cr.App.1990).
Moreover, the appellant claims that the trial court's override of the jury's recommendation of a sentence of life without parole was fundamentally unfair in the present case for a number of reasons: because it considered allegedly inadmissible evidence, specifically a presentence report and statements of the appellant's codefendants; because the prosecutor's argument at the sentence hearing *539 was allegedly improper; because the trial court based its death sentence on the aggravating circumstance of pecuniary gain for which there was insufficient evidence; because the trial court failed to weigh the mitigating circumstance that the appellant had no significant history of prior criminal activity; and because the trial court allegedly failed to consider the jury's recommended verdict of life without parole. Because this court has previously held in this opinion that there was sufficient evidence presented by the State to support the aggravating circumstance of pecuniary gain and that the prosecutor's argument during the sentencing hearing was proper, these claims will not be discussed.
Moreover, this court has previously held that presentence reports are admissible evidence, which may be considered by a trial court in sentencing a defendant to death, provided the information contained therein is relevant to sentencing and the defendant has an opportunity to rebut this evidence. See Thompson v. State, 503 So.2d 871, 880-881 (Ala.Cr.App.1986), affirmed, 503 So.2d 887 (Ala.), cert. denied, 484 U.S. 872, 108 S.Ct. 204, 98 L.Ed.2d 155 (1987).
"It is clear to this Court that the use of the presentencing report is consistent with Ala. Code 1975, § 13A-5-45(d), Alabama's capital murder statute which states:
"`Any evidence which has probative value and is relevant to sentence shall be received at the sentence hearing regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant is accorded a fair opportunity to rebut any hearsay statements. This subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or the State of Alabama.'
"The entire report itself is an out-of-court statement and is entirely hearsay; however, it is admissible under the Ala. Code 1975, § 13A-5-47. Thompson v. State, supra. The trial court is not obligated to do more than provide a fair opportunity for rebuttal; where the record indicates that the defendant was given sufficient opportunity to rebut any hearsay statements made at the sentencing hearing, there is no error. Johnson v. State, 399 So.2d 859 (Ala.Crim.App.1979), aff'd in part and rev'd on other grounds, 399 So.2d 873 (Ala.1979)."
Ex parte Davis, 569 So.2d 738, 741 (Ala. 1990), cert. denied, 498 U.S. 1127, 111 S.Ct. 1091, 112 L.Ed.2d 1196 (1991). In the present case, the appellant was provided a copy of the presentence report and was provided the opportunity rebut the statements in the report, and in fact did so.
Furthermore, the statements by the codefendants were admissible, because they were relevant to sentencing and had probative value. Additionally, the record indicates that the appellant requested the trial court to consider one of her codefendant's statements; therefore, any alleged error would have been invited. Gibson v. State, 555 So.2d 784, 797 (Ala.Cr.App.1989). For a full discussion of this issue see Part XX, infra.
The record indicates in the trial court's written sentencing order that the trial judge in fact found the existence of the mitigating circumstance that the appellant had no prior criminal history. In the sentencing order the trial court stated:
"In weighing the aggravating and mitigating circumstances, the Court is aware of the nature of the process as defined in Section 13A-5-48. It is not a matter the Court takes lightly. After carefully considering the matter, the Court is convinced that the one statutory aggravating circumstance found and considered far outweighs all of the non-statutory mitigating circumstances, and that the sentence ought to be death."
It is this statement by the trial court that it weighed all of the nonstatutory mitigating circumstances without referring any statutory mitigating circumstances on which the appellant bases her claim. However, in its sentencing order the trial court also stated that: "Section 13A-5-51(1) mitigating circumstance is present. The defendant has no criminal history." Moreover, following this hearing, a hearing was held on the State's motion, filed pursuant to Rule 10(f), A.R.App. *540 P., during which the trial court indicated that it had considered this statutory mitigating circumstance. Because the sentencing order clearly states that the trial court found the existence of this mitigating circumstance and that it weighed the aggravating circumstance against the statutory and nonstatutory mitigating circumstances, as required by § 13A-5-48, Code of Alabama 1975, we find no error in the instant case.
Finally, the sentencing order clearly indicates that the trial court also considered the jury's advisory verdict. The jury recommended a sentence of life without parole by a vote of seven to five. There is no indication in the record that the trial court failed to consider this advisory sentence.

XX
The appellant argues that the trial court erroneously considered statements made by codefendants Sockwell and Hood during the sentencing hearing at which the jury's advisory verdict was overridden. The appellant bases this claim on the grounds that she was not given an opportunity to cross-examine these codefendants or to challenge the reliability of their confessions. No objections were raised by the appellant on these grounds during the sentencing hearing, thus any claimed error must rise to the level of plain error. Rule 45A, A.R.App.P. This failure to object weighs against any claim of prejudice. Ex parte Womack, 435 So.2d 766, 769 (Ala.), cert. denied, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983). Moreover, the record indicates that it was the appellant who requested that one of the codefendant's statements be considered.
During the sentencing hearing, defense counsel stated as follows:
"Your Honor, we have reviewed the report of the sentencing department that you've ordered and we have some objections to the report. I guess we should address those right now. In regardwe do not have an objection to the conclusion reached in the recommendation of life without parole but in case the Court is to rely on the report, we object to that part of the report, whereby the presentencing department has stated that Louise Harris was identified by all of the co-defendants as having planned the murder. We would submit the statement or request that the statement of Alex Hood be entered and we say that that does not support it by the evidence."
Thereafter, in examining the parole officer who prepared the presentence report, defense counsel elicited testimony that the officer had not considered the entire statements of the co-defendants, concluding that the evidence the officer had reviewed was an investigative report prepared by the police department. Thereafter, during the prosecutor's examination of this witness, he was asked if he had read the statements of McCarter, Hood, or Sockwell. He responded that he had not read their specific statements. The trial court then stated as follows:
"THE COURT: Let me interrupt for a minute. Did I not request this morning that you go get those statements? I want everybody to know this.
"THE WITNESS: Yes, sir.
"THE COURT: And I now have `em, but I have not had an opportunity to read `em since they weren't attached to the report. But for the record's sake and for this, I have requested those question and answer statements to be made a part of this report.
"[PROSECUTOR]: State has no objection and would join in the motion of the defense as to Mr. Hood's, and we would also request the Court to consider the other two.
"THE COURT: Well, I've requested all three."
"An accused cannot by his own voluntary conduct invite error and then seek to profit thereby." Spears v. State, 428 So.2d 174, 179 (Ala.Cr.App.1982). "The invited error rule has been applied equally in both capital cases and noncapital cases." Rogers v. State, 630 So.2d 78 (Ala.Cr.App.1991), reversed on other grounds, 630 So.2d 88 (Ala.1992).
The appellant sought to introduce these statements by the codefendants in order to rebut the claim in the presentence investigation report that the accomplices identified her as having participated in the *541 murder. Therefore, the codefendants' statements were relevant. Moreover, hearsay evidence, such as these statements, may be introduced and considered during the sentencing stage of the capital murder trial. See Henderson v. State, 583 So.2d 276 (Ala. Cr.App.1990), affirmed, 583 So.2d 305 (Ala. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992). See also § 13A-5-45(d) and (e), Code of Alabama 1975. Thus, because this evidence was relevant and because its introduction was requested by the appellant, admitting these statements did not constitute plain error.

XXI
The appellant argues that her sentence of death cannot stand because it was based on one aggravating circumstance, which she claims was inapplicable in her case. The appellant argues that the State failed to prove either that Sockwell and Hood were paid for the killing, or that the appellant would gain the insurance money and other benefits paid upon her husband's death. However, the record indicates that the State clearly proved the aggravating circumstance pursuant to both of these theories. The evidence established the pecuniary gain aggravating circumstance by showing that the appellant paid Hood and Sockwell each $50 for committing the offense. The pecuniary gain "aggravating circumstance should be considered as established where the defendant is convicted of the capital offense as an accomplice-hirer." Haney v. State, 603 So.2d 368 (Ala.Cr.App.1991).
Furthermore, the State presented sufficient evidence to support the theory that the appellant had had her husband murdered in order to secure his insurance proceeds as well as other benefits. As previously discussed, McCarter testified that the appellant was aware of these benefits and that she wanted her husband killed in order to obtain them; McCarter further testified that Sockwell and Hood were paid $50 each and were promised more when the appellant secured these monies; Trimble testified that the appellant wanted her husband murdered before he borrowed against too much of his insurance money; and the appellant admitted that she was familiar with her husband's pay-check and the fact that certain monies were withheld from it to provide for certain benefits. Thus, the State provided sufficient evidence of this aggravating circumstance.

XXII
The appellant argues that her sentence of death is disproportionate to sentences imposed on similar defendants under similar circumstances. Specifically, she refers to the fact that Lorenzo McCarter did not receive the death sentence and that other cases exist, involving similar crimes, in which defendants did not receive a sentence of death.
It is clear that, upon her conviction for murder for pecuniary gain, the appellant was eligible for a sentence of death. § 13A-5-51(7), Code of Alabama 1975. Moreover, similar penalties have been imposed in similar cases. See Williams v. State, 461 So.2d 834 (Ala.Cr.App.1983), reversed on other grounds, 461 So.2d 852 (Ala.1984); Haney v. State, supra; Heath v. State, 455 So.2d 898 (Ala.Cr.App.1983), affirmed, 455 So.2d 905 (Ala.1984), affirmed, 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985). Under the facts of this case, the appellant's sentence is proportionate to her crime and to sentences imposed in similar cases.
Lorenzo McCarter received a sentence of life without parole, after the State agreed to pursue only a sentence of life without parole, provided that he testify at the appellant's trial. As to the other appellants, Hood, the driver of the automobile, was convicted of the capital offense and was sentenced to life imprisonment without parole. Hood v. State, 598 So.2d 1022 (Ala.Cr.App.1991). Sockwell, the triggerman, was convicted of the capital offense and was sentenced to death. His appeal is now pending before this court. Thus, in the present case, the originator of the offense, who persisted and urged its undertaking and who provided the incentives for its completion, received the death sentence. Moreover, she was the victim's wife and, thus, his closest and most trusted relative. The triggerman also received the death sentence. The middleman, who was having an affair with the appellant and who arranged *542 the liaison between the appellant and the actual murderers, received a sentence of life imprisonment, pursuant to his aid to the State in the case against the appellant. The driver of the automobile also received a sentence of life imprisonment. According to these individual roles in the present offense, we consider the appellant's sentence of death in this case to be proportionate to her accomplices.

XXIII
In accordance with § 13A-5-53, Code of Alabama 1975, we have reviewed the record, including the guilt and sentencing proceedings, for any error that adversely affected the rights of the appellant, and we have found none. Nor do we find any evidence that the sentence was imposed under influence of passion, prejudice, or any other arbitrary factor.
The trial court properly found the existence of one aggravating circumstance: that the murder was committed for pecuniary gain. § 13A-5-49(6), Code of Alabama 1975. The trial court found the existence of one statutory mitigating circumstance, that the appellant has no criminal history. § 13A-5-51(1), Code of Alabama 1975. In his sentencing order, the trial court addressed the statutory mitigating circumstance defined by § 13A-5-51(4), stating that "[w]hile there were others involved and this defendant did not pull the trigger, her participation was such that, but for her, there probably would never have been a killing. She planned it, provided the financing and stood to benefit the most." We find no error in the trial court's holding that this statutory mitigating circumstance was not present in this case. As to the nonstatutory mitigating circumstances, the trial court wrote as follows:
"Defendant's attorneys did a thorough job of presenting non-statutory mitigating circumstance evidence, and this Court has considered all of it.
"The defendant had family and friends who cared about her and had relationships with her which were beneficial to them and her. She was a hard working and respected member of the community. She was a steady worker in her church and community. She was held in high regard by her employers and friends.
"Some of the evidence was circumstantial and included the testimony of individuals with criminal histories and/or a pending charge. Counsel for the defendant did a thorough job in exploring all weaknesses of the State's case, including the credibility of witnesses. This Court has no reason to go behind the guilty verdict of the jury and will not do so. This Court finds the defendant guilty beyond a reasonable doubt. This Court has carefully considered all of the non-statutory mitigating circumstance evidence proffered by the defendant. The Court has also given careful consideration to all of the defendant's contentions concerning non-statutory mitigating circumstances including all of the arguments of her attorneys and the contentions reflected in her proffered jury instruction listing mitigating circumstances. All of the defense's non-statutory mitigating circumstance evidence has been carefully considered. In entering the non-statutory mitigating circumstance findings, and the findings concerning statutory mitigating circumstances, the Court applied the burden of proof set out in Section 13A-5-45(g) and has gone further and resolved every legitimate doubt in the defendant's favor."
The trial court properly considered the nonstatutory mitigating circumstance provided by the appellant.
As to the weighing of these aggravating and mitigating circumstances, the trial court wrote:
"In weighing the aggravating and mitigating circumstances, the Court is aware of the nature of the process as defined in Section 13A-5-48. It is not a matter the Court takes lightly. After carefully considering the matter, the Court is convinced that the one statutory aggravating circumstance found and considered far outweighs all of the non-statutory mitigating circumstances, and that the sentence ought to be death."
After an independent weighing of the aggravating and mitigating circumstances in this case, we find that the evidence supports the trial court's conclusion and indicates that *543 death was the proper sentence. The appellant's statements, actions, role in the offense, and the evidence supporting her guilt, lead us to this conclusion.
The sentence of death in this case is neither excessive nor disproportionate to the penalties imposed in similar cases, considering both the crime and the defendant. See discussion at Issue XXII. Therefore, the appellant's conviction and sentence of death are proper, and the judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur, except MONTIEL, J., who dissents with an opinion.
MONTIEL, Judge, dissenting.
Does a defendant in a capital murder case, who is sentenced to death by electrocution, have an absolute right to be present during all pretrial proceedings relating to the case? I believe the answer is yes, because of the guarantees provided by the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fifth Amendment of the United States Constitution.
The majority opinion correctly concludes that the presence of a capital defendant at trial may not be waived by counsel. Proffitt v. Wainwright, 685 F.2d 1227 (11th Cir.1982). The right to participate in the preparation of a defense is a fundamental right afforded to all criminal defendants, especially in those cases in which the charge is punishable by death. The majority, however, ignores this basic right by concluding that "the appellant's presence [at a pretrial hearing] would have been useless to her defense" or that "she was not prejudiced by her absence". I cannot agree that the appellant was not prejudiced by her absence from numerous hearings.
The majority opinion further concludes that the appellant's right to a fair trial was not violated by the appellant's absence from certain pretrial proceedings; however, the record is silent as to which hearings the appellant did not attend. Should a capital defendant's conviction be upheld where the record concerning the basic constitutional issue presented in this case is incomplete? I believe that we must answer this question in the negative. This case should be remanded to the trial court for that court to supplement the record or to conduct a hearing to determine which pretrial hearings the appellant did not attend. Only with a complete record can this court determine with certainty whether the appellant's constitutional rights were violated.
Justice Harlan F. Stone once stated, "[T]he law itself is on trial in every case as well as the cause before it." This case is a trial on a capital defendant's right to be present at pretrial hearings. This court cannot ignore this right because of the difficult cause in which it is presented.
For the foregoing reasons, I respectfully dissent and I would remand this case to the trial court to supplement the record to reflect the appellant's presence at or absence from all pretrial hearings.
NOTES
[1] In Adams v. State, supra, the court held that the judge committed reversible error by removing the defendant in a murder trial from the courtroom during a discussion between trial judge and counsel, in the jury's absence, regarding a witness's competency. The court held that a defendant has the right to be present, and must be present, during the trial of a capital case; thus no action by the trial court may occur in a defendant's absence, because his right to be present extends to discussions of questions of law as well as questions of fact. The court held that the trial judge's offer to repeat the argument in the defendant's presence could not possibly have restored the accused to the position of hearing what had been said in his absence.
[2] The trial court noted that the prior criminal record of any State's witnesses should be turned over by the prosecutor pursuant to Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Moreover, the trial court ordered that the State turn over any information on prior convictions of State's witnesses if they were known to them. The trial court also ordered the State's entire file to be turned over to the appellant. Eventually, during the trial, the court allowed defense counsel to ask certain questions of State's witness Freddie Patterson concerning his prior criminal record.
[3] In Proffitt v. Wainwright, the court held that the trial court erred in allowing a post-trial sentencing hearing to be conducted in the defendant's absence after a purported waiver of his presence by defense counsel. The court held that, even if it were to follow the cases cited by the State for a departure from the no-waiver rule, at least a "knowing and voluntary consent" would be required and, because the defendant was neither apprised of the hearing nor afforded an opportunity to assert his right to attend, he could not have knowingly or voluntarily waived his right to be present.
[4] This latter quote is taken from Justice O'Conner's concurring opinion, which was joined in by Justice Blackmun.
[5] For example, the appellant argues that the trial court's instruction about promises received by McCarter was misleading, because it suggested that the promise that the State would not seek the death penalty was not binding because the court was not a party.
[6] The appellant cites as error the trial court's failure to define the term "a crime of moral turpitude." Moreover, the appellant cites as error the trial court's reference during his oral charge to the "State of Alabama, figuratively, the people of this community [who] come into this courtroom by and through their representatives from the District Attorney's Office." However, a review of the context of this language clearly demonstrates that the trial court was instructing the jury on the importance of its role in the judicial system.